36  193
42   47
36    193
52LRA554n

MARY BRANCH *vs.* WILLIAM DAWSON and others.

December 13, 1886.

**Struck Jury—Peremptory Challenges.**—A party has no right of peremptory challenge to any of the list of 16 constituting the *venire* for a struck jury, and the fact that, by reason of the non-appearance of a part of this number, talesmen have to be called to complete the jury, gives no right of peremptory challenge to those on the struck list who do appear.

**Same—Mode of Summoning.**—The provisions of statute as to the mode of summoning grand and petit jurors are applicable to struck juries.

**Banks—Entry in Depositor's Pass-Book—Explanation by Parol.**—An entry by a bank in a pass-book of a depositor, in the usual form, crediting him with a certain sum as deposited, does not constitute a written contract between the parties, but is merely evidence in the nature of a receipt for a deposit, and may be explained or contradicted by oral testimony.

**Same—Deposit in Name of Another.**—The *mere* deposit of the money of the depositor in a bank in the name of another (the act being entirely between the depositor and the bank, to which the other person is in no way a party) will not of itself pass the title to the latter.

Plaintiff brought this action in the district court for Ramsey county, in 1884, to recover the amount of a deposit of $5,000, made by her husband in her name, in July, 1869, with the then banking-house of Dawson & Co., in which the defendants were partners. After the de-
v.36m—13

cision of this court, (33 Minn. 399,) sustaining the complaint as against a demurrer, the action was tried before *Simons*, J., and a struck jury, and the defendants had a verdict. Plaintiff appeals from an order refusing a new trial.

*H. P. Herring*, for appellant.

*Warner, Stevens & Lawrence* and *O'Brien & O'Brien*, for respondents.

MITCHELL, J. The statute regarding struck juries (Gen. St. 1878, c. 71, § 15) does not contemplate or authorize peremptory challenges to any of the 16 names constituting the struck list. The reason is that striking 12 names from the list of 40 selected by the sheriff is a substitute and equivalent for the right of peremptory challenge given in other cases. The mere fact that a sufficient number do not appear, and that talesmen have to be called to complete the jury, does not give a party a right of peremptory challenge to any of those on the struck list who do appear. The general provisions of the statute as to the mode of summoning grand and petit jurors are equally applicable to struck juries. Hence, leaving a notice at the place of residence of the juror with some person of proper age is sufficient. Gen. St. 1878, c. 107, § 8; Id. c. 71, §§ 4, 15. The court below was therefore right, both in refusing to quash the *venire*, and in refusing to allow plaintiff's peremptory challenges.

2. The preliminary proof as to the cash-book and ledger kept in defendants' bank would not have entitled them to be introduced in evidence had objection been made. But they were introduced, without objection, as defendants' *account-books*, and therefore the court was right in instructing the jury that they were *prima facie* evidence of the charges therein contained. Gen. St. 1878, c. 73, § 78. The parties seem not to have had in mind on the trial that such books need not be authenticated by the suppletory oath of the person who made the entries. *Webb* v. *Michener*, 32 Minn. 48, (19 N.W. Rep. 82.)

3. The pass-book (Exhibit A) issued by defendants contained the following entry:

"*Dawson & Co. in Account with Mrs. William Branch:*

"*Dr.* 1869, July 12. To Dept. - - - $5,000."

This entry did not constitute a written contract. It was merely evidence, in the nature of a receipt, of the fact that plaintiff, or some one for her, had deposited that sum with defendants as bankers, and, like any other receipt, might be contradicted or explained by oral testimony.

4. According to plaintiff's testimony she had given to her husband, to be by him deposited for her with defendants, $5,000 of her own money, which had never been repaid or returned to her. The evidence also tended to show that, after her husband's death, plaintiff did not suppose that there was any money on deposit with defendants to her credit, or subject to her order. If this were so, the inference would be inevitable that her husband had used the money, or, at least, that it had gone into his estate, which would consequently be her debtor for the amount. It might be fairly argued that in such a case she would naturally have presented a claim against the estate. Hence we think it was competent to prove that she made no such claim. It was a fact tending to show that her conduct in this respect was inconsistent with her present claim. This evidence would be merely circumstantial, and, of course, susceptible of explanation, but, in our opinion, competent. As plaintiff's claim was, to say the least of it, rather a stale one, and most of the parties who had personal knowledge of the facts were dead, a very considerable latitude was properly allowed defendants in the introduction of any circumstantial evidence which would have a legitimate bearing upon the question of the genuineness of plaintiff's claim.

5. The theory of the defence was that plaintiff never had any money of her own, and consequently that none of her money ever was deposited with defendants; that the idea of making any such claim was first suggested to her mind by her finding this old pass-book among her husband's papers in 1880, nearly eight years after his death. Their theory in explanation of this credit to plaintiff in this pass-book and in the books of the bank is that, for a purpose of his own, William Branch, plaintiff's husband, in his life-time a customer of the bank, caused $5,000 of his own funds then on deposit in the bank to be transferred from his account, and placed to the credit of his wife, and that the amount was drawn out shortly afterwards. As tending to

prove this, they introduced in evidence their bank-books already referred to, which showed that this entry of July 12, 1869, was the only credit ever made to plaintiff, and that on the same day her husband's account was charged with the same amount, and that on August 19th the account of plaintiff was balanced on the books by a charge of $5,000. The books also showed that on July 17th, five days after this transfer of $5,000 to the credit of plaintiff, Mr. Branch drew out the small balance still to his credit, and closed his account, which remained closed until the following September, when it was reopened. In connection with this evidence defendants, against plaintiff's objection and exception, introduced evidence showing that in July Mr. Branch was involved in a controversy with the Lake Superior & Mississippi Railroad Company regarding work done by him on a construction contract, which, if decided adversely to him, he feared would ruin him financially, but that this controversy was settled upon terms highly favorable to him shortly before his bank account was reopened in September. This evidence, while perhaps not of the strongest or most reliable character, was nevertheless competent as tending to prove the truth of defendants' explanation of the circumstances connected with the entry of this credit to plaintiff, by showing the existence of a reason and motive on the part of Branch for transferring his funds to the credit of his wife upon the books of the bank.

6. But, conceding that none of plaintiff's money was ever deposited with defendants, but that her husband deposited $5,000 of his own money to her credit under such circumstances as to amount to a perfected gift, so that the title and control of the money absolutely passed from him to her, plaintiff would be entitled to recover, unless the money had been paid to her or to her order. Owing to the lapse of time, and the decease of the book-keepers in the bank who made the entries, the defendants were unable to produce any evidence as to whom the money had been paid to, except the entries in their cashbook and ledger. The evidence in the case, however, showed that, if Branch deposited $5,000 of his own funds to the credit of plaintiff, he never communicated the fact to her, never said anything to her about giving her the money, and never gave her possession of the

pass-book, or any other evidence of the deposit; in short, that the whole matter of the deposit rested entirely between himself and the defendants.

With reference to this phase of the case, the court, at the request of defendants, instructed the jury that "if William Branch caused his account in defendants' books to be charged with $5,000, and a credit to this plaintiff of $5,000 to be made in defendants' books, and the pass-book in evidence to be made and handed to him, *these facts alone* did not operate to render defendants liable to plaintiff in any amount." The court also, in substance, instructed the jury that, until something more than this was done, the money would still be William Branch's, and meanwhile it would be competent and lawful for him and defendants to make any disposition of the money satisfactory to themselves.

These instructions were evidently asked for and given with reference to the hypothesis that Branch himself might have drawn out this money without any authority from plaintiff. The giving of these instructions is assigned as error. Substantially the same question, although in different form, is raised by exceptions to other instructions and refusals to instruct. Plaintiff's contention is that, by the *mere* act of placing this money to her credit on the books of the bank, Branch's title to and control over it entirely ceased, and that it became the absolute property of plaintiff, between whom and defendants the relation of debtor and creditor arose immediately. This involves the only question of any importance in the case. In our opinion, the instructions given by the court embody correct principles of law. An incomplete voluntary gift creates no right which can be enforced. A gift requires the assent of both minds, as much as a contract. To say that a conveyance or transfer of property by way of gift imports an agreement is only to say that ownership cannot be thrust upon a person against his will. Knowledge of the gift on the part of the donee at the time it is made may not be essential in order that it may take effect. If the act of transfer be complete on part of the donor, subsequent acceptance by the donee, *before revocation,* will be sufficient. But a *mere* deposit of the property by the depositor, in the name of another, with a third person, will not of itself be suffi-

cient to pass the title. This act is one entirely between the depositor and the bailee, to which the person in whose name the deposit is made is in no way a party. It would, *of itself*, no more pass title than would the execution of a deed by a person, and the placing it on record by him, without the knowledge or consent, express or implied, of the person named as grantee. *Brabrook* v. *Boston Five Cents Savings Bank*, 104 Mass. 228; *Sherman* v. *New Bedford Savings Bank*, 138 Mass. 581; *Robinson* v. *Ring*, 72 Me. 140.

Appellant cites, in support of his contention, two or three cases of deposits in savings banks by one person in the name of or for the benefit of another. It will be found that in all these cases the depositor died leaving the money still on deposit, and special stress is by the courts laid upon the fact that there had been no *revocation, or attempt at revocation*, by the depositor. And in most of these cases reference is made, and special force attached, to the statutes or by-laws governing deposits in savings banks made by one person for the benefit of another, with reference to which it was to be presumed that the party made the deposit. For these among other reasons we do not think the cases cited fully support appellant's contention.

This disposes of all the assignments of error which we deem necessary to consider here. As to the others, we simply remark that, in our opinion, none of them are well taken.

Order affirmed.