# HYDRAULIC-PRESS BRICK COMPANY v. HAYNES BREAD COMPANY and Others.[1]

February 11, 1915.

Nos. 19,026—(211).

**Contract — acceptance of defective material.**

1. A carload of defective building material was shipped by plaintiff to

---

[1] Reported in 151 N. W. 140.

128 M.—26.

defendants Butler, building contractors, who, without examining the material while on the car, sent a drayman to haul it to the building for which it was intended. When the first load arrived at the building, they discovered the defect and thereupon conferred with the owner of the building, and, being informed that the use of such material would not be permitted, they reloaded upon the car all the material removed therefrom and immediately returned the entire carload to plaintiff. *Held* that unloading a portion of the defective material under such circumstances did not constitute an acceptance thereof.

**Breach of contract — measure of damages.**

2. Plaintiff, having contracted with the Butlers to manufacture and deliver certain material for the building not obtainable in the market, and, having failed to deliver such material at the time agreed upon, is liable to them for the additional expense necessarily incurred in consequence of such default; but the damages should be limited to such necessary additional expense, and should not include any expense which could have been avoided by reasonable effort on the part of the Butlers.

**Same — error to exclude evidence.**

3. It was error to exclude testimony tending to show that the damages resulting from plaintiff's failure to deliver material on time could have been lessened by proper effort on the part of the Butlers.

**Damages excessive.**

4. The amount allowed against plaintiff as damages is excessive, for the reason that expenses are included therein which did not necessarily result from plaintiff's delay in delivering the material.

Action in the district court for Ramsey county to foreclose a mechanic's lien. The case was tried before Catlin, J., who made findings and ordered judgment in favor of Butler Brothers in the sum of $68.50. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Reversed and new trial granted.

*C. J. Rockwood,* for appellant.

*Schmidt & Waters, Butler & Mitchell* and *J. M. Martin,* for respondents.

TAYLOR, C.

Suit to foreclose a mechanic's lien. On September 2, 1911, the defendants Butler contracted with defendant Haynes Bread Co. to construct a bakery building for the bread company, in the city of St.

Paul, and to complete the building on or before December 1, 1911. Shortly thereafter, the Butlers made a contract with plaintiff under which plaintiff furnished enameled terra cotta for the front of the building of the agreed value of $960, and enameled brick and other material of the agreed value of $1,760.41, amounting in the aggregate to the sum of $2,720.41. It is conceded that plaintiff furnished this material, that it was used in the building, and that it was of the value stated; but plaintiff did not furnish the terra cotta within the time agreed upon, nor until December 14, 1911, and, in consequence, the Butlers were unable to complete the building within the time they had agreed to do so. They interposed a counterclaim for damages occasioned by this delay, and the sole controversy is over this counterclaim. The trial court allowed the following items:

| | |
|---|---:|
| Freight paid | $ 355.76 |
| Construction of false or temporary front | 30.27 |
| Unloading and reloading green terra cotta | 14.50 |
| Extra cost of labor in laying brick and terra cotta | 485.75 |
| Expense for heating building | 196.92 |
| Extra expense for operating hoisting engine | 52.50 |
| Coke for heating mortar | 75.00 |
| Extra wages for superintendent, carpenter foreman, engineer and watchman | 1,025.21 |
| Value of use of building from December 1 to March 10 | 543.00 |
| Total | $2,778.91 |

The aggregate of the amounts so allowed exceeded the amount of plaintiff's claim, and judgment was rendered against plaintiff and in favor of the Butlers for such excess. Plaintiff appealed.

Plaintiff agreed to deliver the material f.o.b. cars at St. Paul, and admits that the Butlers paid the freight and are entitled to the amount allowed them therefor, but challenges all the other items allowed by the court. Plaintiff agreed to furnish cream colored terra cotta, but made an error in the order transmitted from the office to the factory by reason of which it was manufactured of a green color. When manufactured it was shipped to St. Paul and the Butlers noti-

fied of its arrival. They employed a drayman to remove it from the car to the building, who commenced hauling it on November 4. When the first load arrived at the building the Butlers discovered that it was green instead of cream colored, and thereupon interviewed the bread company to learn whether the green terra cotta could be substituted for cream colored. The bread company refused to permit such substitution. In the meantime the drayman had hauled three loads from the car to the building. All the terra cotta that had been removed from the car was immediately replaced thereon and the entire lot returned to plaintiff. Plaintiff manufactured and shipped another lot of the correct color which was received and unloaded on December 14, 1911. It is conceded that the terra cotta was of a special design made expressly for this building and could not be purchased upon the market, and also that plaintiff knew that the Butlers were under contract to complete the building by December 1. As the terra cotta could not be purchased in the market, the Butlers were compelled to have it manufactured either by plaintiff or others. Had that received on November 4 been such as plaintiff agreed to furnish, they could easily have completed their contract within the stipulated time.

Plaintiff contends that the Butlers accepted the green terra cotta as a performance of plaintiff's contract, for the reason that they removed a portion of it from the car. The Butlers did not discover that it was green instead of cream colored until the first load arrived at the building. They promptly conferred with the owner of the building to see if they would be permitted to use it, and not obtaining such permission, immediately and on the same day, reloaded all that had been unloaded and returned it to plaintiff. Plaintiff made no claim at that time that it had been accepted, but admitted making the mistake, and proceeded to manufacture and deliver a new lot without raising any such question. The claim that the green terra cotta had been accepted, now made for the first time, cannot be sustained.

One who fails to perform his contract is liable for such damages as the parties, if they had looked forward to the consequences of nonperformance when making the contract, would have contemplated as likely to follow from its breach, and which did in fact follow from its breach. 1 Dunnell, Minn. Dig. § 2559, and cases cited. This rule is supplemented, and perhaps modified, by the rule that the party in-

jured by the default must use all reasonable means to prevent any unnecessary loss, and cannot recover for any loss which could have been avoided by proper effort on his part.    Baessetti v. Shenango Furnace Co. 122 Minn. 335, 142 N. W. 322; Hewson-Herzog Supply Co. v. Minnesota Brick Co. 55 Minn. 530, 57 N. W. 129.

The Butlers claim that after the correct terra cotta arrived the weather became so inclement that it was necessary to suspend work entirely for an extended period, and that, on account of these delays and of weather conditions at the time the work was in fact performed, the expense of performing it was largely increased.    The greater part of the damages allowed rest upon this claim.    The rear wall of the building and the side walls, from the rear to within about 14 feet of the front, were erected in November, and a temporary or false front was constructed between the side walls and about 14 feet back from the front of the building.    This front was built for the purpose of inclosing a portion of the building so that it could be warmed and work be carried on therein.    The terra cotta was all used in the front of the building and outside this inclosure, and plaintiff is charged with a large amount of damages claimed to have been caused by delays and inconveniences in laying it resulting from the weather conditions.    Plaintiff offered to prove by competent testimony that it was entirely feasible, at a small additional expense, to construct a temporary or false front so as to enclose the entire front of the building and permit the construction of the front without interruption or increased expense on account of the weather, and that this was the usual and customary method of doing such work under such conditions.    All testimony offered for this purpose was excluded. It had a direct bearing upon whether the Butlers made proper efforts to avoid any unnecessary damages and should have been admitted. Its exclusion was substantial error.

The contention of plaintiff that the amount allowed as damages is greater than the evidence will justify must also be sustained.    The Butlers are entitled to recover the additional expense necessarily incurred by them in consequence of plaintiff's default; but the damages should be limited to such necessary additional expense, and should not include any expense to which they would have been subjected if

such default had not occurred, nor any expense which could have been avoided by reasonable effort on their part. The court found that "on account of severe cold weather" they "necessarily expended for labor in laying brick and terra cotta on the front of said building the sum of $485.75 more than said labor would have cost if said work could have been done * * * during the month of November." They began this work on December 14, and state that they had it so nearly completed on December 31 that they could have finished it in two days more if the weather had permitted. On the night of December 31 the weather turned intensely cold and so remained through nearly all of January, and all work was suspended for three or four weeks. As soon as the weather moderated, the laying of the brick and terra cotta was completed, and apparently only two days were required in which to complete it.

The Butlers testify that the weather conditions during November were ideal for the performance of such work, and, although the temperature was frequently near zero, that it was not cold enough to cause any inconvenience. They put in evidence the official weather record kept at St. Paul covering the period November 1, 1911, to March 10, 1912. From this record, it appears that the weather conditions were as favorable in December as in November. In fact the average temperature for the month was slightly warmer in December than in November. It follows that the claim that doing the work in December was more expensive than doing it in November, for the reason that the weather had become more severe in December, is not borne out by the evidence.

The court found that, under their contract with the bread company, the Butlers were required to heat the building "when necessary, on account of the weather, to dry out the plastering and do the finishing," and that they began heating the building in February for this purpose and continued it until the work was completed. The court allowed against plaintiff the entire amount paid by the Butlers on account of such heating. If no such expense would have been incurred if the work had been performed in November, the allowance was correct; but if such heating would have been necessary if the work had been done in November, then plaintiff should have been

charged only with the amount, if any, which the expense actually incurred exceeded the expense that would have been incurred if the work had been done in November.

More than a thousand dollars are allowed for what are termed extra "overhead" charges. These consist of wages or salary for one of the Butlers as superintendent, for a carpenter foreman, for an engineer, and for a watchman. Some of these charges cover services which perhaps were necessary, and would not have been necessary except for plaintiff's default; but a large portion of them are plainly not within the rule. These charges include the wages or salary of these men from the beginning of the work in December until it was finished, including the time during which all work was suspended, and regardless of whether they were or were not actually engaged upon the work. Their wages for the time during which they were necessarily engaged in this work, over and above the time during which they would have been engaged therein if plaintiff had not delayed them, were properly chargeable to plaintiff; but no allowance can be made for extra time not actually and necessarily devoted to the work. If, for the purpose of retaining their men, the Butlers paid them wages during the time they were not employed, no circumstances are shown which will justify them in charging such expense to plaintiff. It may be added that peculiar and exceptional circumstances must be shown to entitle either of the Butlers to pay for their own time. The damages included in this item were based upon an incorrect rule and cannot be sustained.

As there must be a new trial, we think we have indicated sufficiently the rule that should be applied in the measurement of the damages, and that further discussion is unnecessary.

Order reversed and a new trial granted.