## OSCAR T. BERQUIST v. N. J. OLSEN COMPANY.[1]

December 31, 1925.

No. 24,975.

**Measure of damages.**

1. Plaintiff sold 15 carloads of potatoes to defendant, to be delivered f. o. b. Detroit, Minnesota, in October. The potatoes were loaded, and the defendant accepted and paid for the first 8 carloads, but refused to accept the balance. The bottom dropped out of the potato market. Plaintiff then stored the 7 carloads until spring and sold them at a less price than he was to receive from defendant. *Held* that the measure of damages, which plaintiff was entitled to recover, was the difference between the contract price and the price received, plus the reasonable expense incurred in handling and storing during the period between the refusal to accept and the sale.

**Verdict sustained by evidence.**

2. We find no reversible error in the rulings upon the admissibility of evidence. The evidence supports the verdict of the jury.

Sales, 35 Cyc. pp. 590 n. 26, 31; 598 n. 90; 599 n. 97; 601 n. 34.

Action in the district court for Clay county to recover for breach of contract. The case was tried before Nye, J., and a jury which returned a verdict in favor of plaintiff. Defendant appealed from an order denying its motion for a new trial. Affirmed.

*Marden & Stiening*, for appellant.

*C. G. Dosland* and *Olof L. Bruce*, for respondent.

QUINN, J.

This action grew out of a failure on the part of the defendant to accept and pay for 7 carloads of potatoes in accordance with the terms of two written contracts, which it entered into with the plaintiff, one dated September 22, and the other September 27, 1921. The action was commenced in 1922, tried in January, 1923, and a verdict of $1,637.50 was returned in favor of the plaintiff. Defend-

[1]Reported in 206 N. W. 931.

ant moved for judgment or for a new trial, and appealed from an order, dated in June, 1925, denying such motion.

The record contains many objections to the rulings on the admissibility of evidence, bearing upon the measure of damages, covered by assignments of error. The plaintiff contends that the proper measure of damages, under the circumstances of the case, is the difference between the contract price and the amount received for the potatoes, less the necessary expenses incurred in consequence of defendant's default; while it is contended, on behalf of the defendant, that the measure of damages is the difference between the contract price and the market value at the time of the breach.

The plaintiff was a dealer in potatoes at Detroit, Minnesota. Defendant was a dealer in potatoes at Moorhead, Minnesota. Under the first contract, respondent sold to appellant 10 carloads of potatoes at the agreed price of $1.90 per cwt. to be loaded and delivered in cars on track at Detroit and there inspected and accepted by appellant. Under the terms of the second contract, respondent sold to appellant 5 carloads of potatoes at the agreed price of $1.50 per cwt. to be loaded and inspected and accepted the same as under the first contract. Upon the making of such contracts and in order to comply therewith, plaintiff went out among the farmers and contracted for the purchase of potatoes with which to fulfil such contracts, at prices based upon the contract prices. Accordingly the farmers began to deliver potatoes, which were sorted and loaded into cars at Detroit.

In this way, 5 carloads were delivered to appellant and paid for under the first and 3 carloads under the second contract. The remaining 7 carloads were screened, sorted, inspected and loaded, ready for delivery but, as the evidence shows, appellant refused to accept or pay for the same or any part thereof, although requested so to do. It was late in the season and there was danger of freezing weather. Appellant was duly notified to remove the cars of potatoes. At this time, the plaintiff requested defendant to ship out the potatoes and it is conceded that Mr. Olsen inspected the potatoes, but refused to accept the same. The market had fallen since the

contracts were entered into and for that reason appellant requested that the cars be held on track for a few days. Demurrage charges accrued and appellant was notified that the cars had to be removed. Mr. Olsen then went to Detroit, inspected the potatoes, said they were not up to grade, that the market was low, and refused and neglected to remove the same.

At the time appellant refused to take the 7 carloads off the track at Detroit, all of the buyers had left Moorhead and Detroit for the season. Respondent tried, for a day or two, to dispose of the potatoes at those points. He then wired over the county, found the market glutted and that the potatoes would not bring enough to pay the freight on them. He then went to Minneapolis, where he remained for several days, trying in vain to find a market. He wired Kansas City, Chicago, Des Moines, Peoria and various potato headquarters, but found no market. He then went to the Central Warehouse people in Minneapolis and made arrangements to store the 7 carloads of potatoes for a period of 4 months, at the end of which he caused them to be sold at the rate of $1.55 per cwt.

During the time between the refusal of appellant to accept the potatoes at Detroit, in October, 1921, and the time they were sold, in February, 1922, charges for demurrage, freight, cold storage, insurance and expenses of looking after and selling the potatoes, were something like $3,663.45, leaving a net balance of $1,683.15 from the sale of the 7 cars, or $2,816.85 less than was due the respondent for the potatoes under the contract. The jury awarded respondent but $1,637.50. The question of the expenses incurred in handling, looking after, caring for and selling, was all submitted to the jury, with the result as stated.

The trial court, in submitting the question of the measure of damages, charged the jury as follows:

"At the request of the defendant here I will give the rule once more so that it will be clear to you, the rule as to the market. If there was a market available at Detroit the rule of damages applicable to this case is fixed by statute as follows, assuming that there was a market at Detroit:

"Where there is an available market for the goods in question, the measure of damages is, in the absence of special circumstances, showing proximate damage of a greater amount, the difference between the contract price and the market or current price at the time or times and place when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept."

"Should you find, however, from all the evidence in the case that there was, as plaintiff claims, no market for the potatoes in controversy either at Detroit or at some other point, St. Paul or Minneapolis, upon which the potatoes could with reasonable diligence and business practice have been disposed of at more favorable terms than those obtained by plaintiff, then plaintiff would be justified in disposing of them to the best advantage in St. Paul or Minneapolis, and if necessary to put the same in storage and to use all reasonable diligence in protecting the property and finally disposing of it to the best advantage. If under the evidence you find that such a course was necessary and that plaintiff in all respects used due diligence and his best judgment in caring for and storing the potatoes, as he claims he did, and that he thereby received the best price for the potatoes which was available under all of the existing circumstances, and if you find that after disposing of the potatoes as he claims he did he sustained a loss by reason of realizing a less sum than he would have realized under the contracts had defendant complied with the same, then the plaintiff is entitled to recover by your verdict against the defendant for such damages as resulted in the natural course of events from defendant's breach of the contract under all the circumstances as they have been made to appear by the preponderance of the evidence now before you.

"In estimating such damages you may take into consideration the reasonable and necessary expenditures made by plaintiff in shipping, warehousing, sorting, caring for and marketing said potatoes, the shrinkage thereof under such conditions as you believe actually existed in connection with the marketing of said potatoes at St. Paul in the manner specified by plaintiff. If after the allowance of such

reasonable and necessary expenses for marketing and due allowance for the amount finally received by plaintiff for such potatoes you find that he has realized a less sum than he would have received had defendant performed his part of the contracts, then in that case plaintiff would be entitled to recover by your verdict the difference between the contract price and the net price actually received by plaintiff, as you believe the same appears from all the evidence in the case."

In view of all the facts and circumstances of the case, we know of no measure of damages that would be more fair to all the parties than the one so fully and fairly submitted to the jury by the trial judge in this case. It is well supported by authority. Hydraulic-Press Brick Co. v. Haynes Bread Co. 128 Minn. 401, 151 N. W. 140; Baessetti v. Shenango Furnace Co. 122 Minn. 335, 142 N. W. 322; Mason v. Cedar Lake Ice Co. 123 Minn. 401, 143 N. W. 1125; Sunset Orchard Land Co. v. Sherman Nursery Co. 121 Minn. 5, 140 N. W. 112. The rulings upon the admissibility of evidence were in accordance with the theory of damages adopted by the trial court, in which we find no reversible error. The evidence supports the findings of the jury.

Affirmed.