PRIOR RAUHAUSER v. OWATONNA CANNING COMPANY.[1]

April 1, 1926.

No. 25,179.

**Measure of damages for breach of contract to plant, harvest and deliver crop of peas for canning.**

1. Upon breach of a contract for the planting, harvesting and delivering a crop of peas for canning, where it appears that there was no market for the crop when the breach occurred, that the seller had no choice except to let the crop mature and save the same for seed, and that before he could do so the crop was completely destroyed by hail and wet weather, the court did not err in instructing the jury that the damages were the loss of the crop, that is, the value of the crop cut as canning peas under the contract.

**When omission to submit to jury minor issue not directly raised by pleadings nor litigated is not reversible error.**

2. Where an issue is not directly raised by the pleadings, and no claim made at the trial that one has been litigated, and no suggestion is made of any omission to submit to the jury, when the charge is given, the defeated party should not successfully urge reversible error in the omission to submit a minor issue that possibly might bear on the verdict.

**Rulings correct.**

3. There was no error in the rulings at the trial.

Appeal and Error 3 C. J. p. 860 n. 3.
Sales 35 Cyc. p. 591 n. 41; p. 601 n. 33.

See 2 R. C. L. p. 184; 1 R. C. L. Supp. p. 428.

Action in the district court for Steele county for breach of contract to raise and deliver a crop of peas for canning. The case was

[1]Reported in 208 N. W. 194.

tried before Senn, J., and a jury which returned a verdict in favor of plaintiff. Defendant appealed from the judgment entered pursuant to the verdict. Affirmed.

*Leach & Leach*, for appellant.

*F. A. Alexander*, for respondent.

HOLT, J.

Plaintiff, a farmer, made an agreement with defendant, a canning company, to seed 6½ acres to peas when and as directed by defendant, and to harvest and deliver the crop when the latter determined that it was fit for canning. The plot of ground on plaintiff's farm where the crop was to be raised was selected by defendant who also furnished the seed, 24 bushels at $5 per bushel. Defendant agreed to pay plaintiff 2¼ cents a pound for the peas as shelled at the factory. The crop was planted as agreed. When approaching the canning condition, plaintiff claims he brought in samples, and urged defendant to go out and examine the crop to see if it was ready for harvesting, that defendant delayed doing so, and finally when its manager came out plaintiff was informed that the peas were too far matured for canning, refused them and advised that the only thing plaintiff could do was to try and save the crop for seed; that plaintiff attempted to so do, but rain and hail ruined the crop so that nothing could be saved. Defendant contended that it was plaintiff's fault that the crop was not cut and brought to the factory in time, and that, before the peas were ready for canning, plaintiff voluntarily elected to let them mature for seed peas. In the answer, in addition to the defense that plaintiff breached the contract, defendant set up two counterclaims, viz: The amount due for the seed furnished, and for the profit it would have made had plaintiff delivered his crop under the contract. There was a verdict for plaintiff. Defendant's motion for a new trial was denied, and it appeals from the judgment entered on the verdict.

Of the contract there is no dispute. Plaintiff undertook to raise a crop of peas for canning upon a plot of ground selected by defendant, from seed furnished by it, and was to plant, cultivate, cut and

deliver the crop under the direction of defendant. Nor is there any contention that plaintiff did not fully perform or did not raise a fine crop of peas to the canning stage. The dispute is over the defense that plaintiff broke the contract by refusing to harvest the peas when directed to, instead electing to let the peas mature for seed, and the contrary claim of plaintiff that defendant breached the contract by delaying, against plaintiff's urgent protest, to examine the crop, in order to determine when it was fit to cut and deliver, as under the contract it had agreed to do, until the peas became too mature for canning, and then refused to accept them. The jury accepted plaintiff's contentions. With the issues thus settled in plaintiff's favor, defendant nevertheless claims the verdict should not stand because of its amount and the faulty instructions as to the measure of damages.

It is well to see what situation plaintiff was in when defendant breached this executory contract for the planting, growing, cutting and delivering at defendant's factory of a crop of canning peas. The peas were then beyond the canning stage and there was no market for that sort of peas. The only thing for plaintiff to do was to seek to reduce his damages by allowing the peas to mature and then harvest them. This he attempted to do, but rain and hail destroyed the entire crop and it had to be plowed under. Every one would recognize the propriety of full recovery for the crop at the contract price, had a hailstorm utterly destroyed the peas, say an hour after defendant had informed plaintiff that the peas were too ripe for canning, therefore it would not accept them, it being its fault or breach of duty that they were not earlier cut. This is not like the case of a breach of an executory contract to manufacture or prepare marketable articles or articles not liable to destruction before they can be fully prepared and disposed of for some price. This was a crop past use for canning, but not fully matured for any other purpose for which there was a market when the breach occurred, and the preparation of which for any use was subject to uncertainty and utter disappointment. The rule approved by this court is the one stated in 2 Sutherland, Dam. (4 ed.) § 648: "A party to a contract

which has been broken by the other party must so conduct his affairs, after he has knowledge of the breach, as to lessen the damage he may sustain as the result of it; and to the extent that loss can thus be avoided the vendee will be relieved from liability." Baessetti v. Shenango Furnace Co. 122 Minn. 335, 142 N. W. 322. Where there is a breach of a contract of the sort here in question, it became the duty of plaintiff upon whose land the crop was growing to mitigate the damage resulting to him from defendant's breach. However, it was not for plaintiff to show how much the damages could have been reduced. He satisfied the law when he showed that he made bona fide efforts to save or harvest the crop. This he did. The result of his work was nothing.

The situation here was akin to where a master dismisses a servant before the contract of employment ends. The servant may sue for the instalments of wages as they become due, notwithstanding he has done no work, provided he has made bona fide effort to find other like employment without success. The burden is upon defendant to show that he could have obtained other employment, and the amount that thereby the damages should be reduced. In Schommer v. Flour City Iron Works, 129 Minn. 244, 152 N. W. 535, the court said, citing cases: "It has already been determined in prior decisions that a servant discharged without cause is presumptively entitled, as damages, to an amount equaling his wages for the unexpired portion of the term; but that the employer may reduce the amount by showing that the servant obtained, or by reasonable effort on his part could have obtained, other employment." This rule is also applied to kindred contracts. B. G. Collier, Inc. v. Kindy, 146 Minn. 279, 178 N. W. 584. This contract involved services.

When this crop was fit to can, plaintiff had earned the full contract price, less the expense of the cutting and delivering. The cutting had to be done in any event. When defendant breached its contract it became liable for the damages then resulting to plaintiff, namely 2¼ cents a pound of shelled peas which had been produced fit for canning. The burden was upon defendant to show how much those damages should be reduced by what plaintiff thereafter by

proper effort could have realized out of the crop. He had a growing crop on hand, thrust upon him by defendant's wrong. He could not dispose of it as it stood. And it is proper to regard it as defendant's in the hands of plaintiff whose duty it was to handle it for defendant's account. This is in line with the theory of the case of Berquist v. N. J. Olsen Co. 165 Minn. 406, 206 N. W. 931. We appreciate there was evidence adduced by defendant that seed peas brought a good price, and that another person in the vicinity had made more by letting half of his crop mature than he made from the half delivered to defendant for canning, he having stacked the peas, allowed to mature, before the hailstorm. Also that defendant was cutting and stacking peas for seed, at the time plaintiff was cutting his, without experiencing difficulty on account of weather conditions.

No issue was made by the answer that there was a failure by plaintiff to minimize the damages. The court was not requested to submit such an issue to the jury, and no objection was made at the trial to the charge. Nor is the question presented in the motion for a new trial, the only exceptions there taken are to parts of the charge given. Unless in a jury case certain issues are raised by the pleadings or are so litigated by consent that it is plain that they are for the jury and require appropriate instructions, it is incumbent on the attorneys to call the court's attention to incidental possible issues which might bear on the verdict by requests to instruct or by some reference to the omission before the jury retires. Nothing of the kind was done. It is readily seen that when the court fails to submit an issue that may have been litigated by consent or has been injected, though not made by the pleadings, a party should not be allowed to sit by and keep silent, speculating on a favorable verdict, and then, if that turns out otherwise, be permitted to claim a new trial because of the court's omission or inadvertence. In this case, defendant might well have deemed it to make for a favorable verdict were not the issue of reduction of damages submitted so as to give the jury a chance to compromise. Moreover the issue of minimizing damages not having been made an obvious or direct issue by the pleadings, the evidence, to which defendant now points,

viz., that seed peas were valuable and that those harvested by plaintiff's neighbors were at a profit, was properly admissible on the issue directly made by the answer that plaintiff had deliberately breached the contract by refusing to deliver the crop as canning peas, and elected to let them mature for seed purposes. We do not think this case, on the proposition mentioned, comes within Wilcox Trux. Inc. v. Rosenberger, 156 Minn. 487, 195 N. W. 489, where the omission was upon a pivotal issue directly made by the pleadings, and Kincaid v. Junkunz, 109 Minn. 400, 123 N. W. 1082, is certainly not in point.

The charge is attacked as not giving the jury the correct measure of damages, namely, the difference between the contract price and the market price at the time of breach. There are two answers. The evidence did not call for such instruction and it was inapplicable in a contract of this kind. Neither party attempted to prove what the pea crop, as it stood when defendant breached the contract, was worth, so the jury had nothing to deduct from the contract price. In the second place, it is apparent, on a moment's reflection, that the general rule above stated cannot be applied. The crop had then no value for the purpose for which plaintiff had raised it. In order to realize anything out of it, it had to mature, and work not contemplated by the parties remained to be done, and in the meantime the result depended on climatic conditions and other contingencies of which plaintiff had no control. It was entirely lost or destroyed.

Defendant contends that G. S. 1923, § 8438, subd. 3 (§ 64 of the Uniform Sales Act), establishes the proper measure of damages, in substance, as first above stated. It is very doubtful if the act is applicable to the agreement under which the peas were grown, but, if so, subd. 3 of the preceding section is more in point which permits the seller to handle and dispose of the goods for the buyer's account. Leonard Seed Co. v. Lustig Burgerhoff Co. 81 Pa. Super. Ct. 499, cited by plaintiff, does not relate to crops raised under a contract by one party thereto, but to produce dealt in by merchants, where the sales act undoubtedly applies.

This observation in St. Louis Range Co. v. Kline-Drummond Mercantile Co. 120 Mo. App. 438, 96 S. W. 1040, is pertinent: "The decisions holding vendees responsible for the full contract price in cases of specific articles manufactured for them, proceed on the assumption that they have acquired title to the property and that it is held subject to their order, or else that it is worthless in the hands of the vendors so that the latter cannot partly reimburse themselves for their loss by using or disposing of it." Here the pea crop when thrown on plaintiff's hands was worthless for the purpose he raised it for, he undertook to minimize the damages, but because of wet weather and a hailstorm nothing was realized therefrom. Under the state of the evidence and the issues presented to the jury, without objection and without a suggestion that any was omitted, we cannot hold that the measure of damages given by the court was either inappropriate or erroneous.

The court's reference to the "value" of the crop in the instructions no doubt was understood by both counsel and jury as being measured by the estimated amount of shelled peas at the contract price of $2\frac{1}{4}$ cents per pound. In the absence of some suggestion at the time that the word might be misconstrued, defendant should not now be heard to urge a new trial on that account.

The errors assigned upon the rulings at the trial do not merit attention.

The judgment is affirmed.