LOUIS SKOLNICK v. IDA GRUESNER AND OTHERS. OLMSTED COUNTY BANK AND TRUST COMPANY, APPELLANT.[1]

January 31, 1936.

No. 30,575.

[1]Reported in 265 N. W. 44.

*Ueland & Ueland* and *Theodore A. Schacht,* for appellant.
*Brill & Maslon,* for respondent.

STONE, JUSTICE.

Defendant Olmsted County Bank and Trust Company appeals from an order denying its motion for judgment notwithstanding the verdict for plaintiff or in the alternative for a new trial.

Appellant does business at Rochester, Minnesota. It is the only real defendant and will be so mentioned herein or designated merely as the bank. Why J. Gruesner and his wife, Ida, are joined as defendants is immaterial. They are not parties to this appeal and, except as witnesses, are out of the case.

Plaintiff sues, as the assignee of Ida Gruesner, for the amount of a special deposit made with defendant June 10, 1929. Defendant is charged as for a conversion of that deposit. It has refused payment to plaintiff, and that is enough to fix its liability if in fàct the deposit was the property of Mrs. Gruesner. During 1929 J. Gruesner was president or general manager or both of the Rochester Holding Company, a corporation which was then erecting, and in early June had almost completed, an apartment building in Rochester. It was financed in part by a bond issue. Mr. Gruesner was conducting negotiations on behalf of the holding company for the sale of the bonds. That sale had not been consummated. There was some difficulty because of liens. June 10, or the day before, Mr. Gruesner borrowed from one Robitshek, in Minneapolis, $6,000, to be deposited with defendant in lieu of a bond against liens. The idea was to accelerate sale of and payment for the bonds secured on the apartment house property. The $6,000 check from Mr. Robitshek was payable, not to the Gruesners or either of them, but to the Rochester Holding Company. Mr. Gruesner took it to the office of defendant, where he interviewed Mr. Dabelstein, its president. For reasons unimportant now it was determined at that conference that $5,000 would be enough to hold on deposit in connec-

tion with the bond issue. Accordingly, Mr. Gruesner was given a cashier's check for $1,000. The remaining $5,000 went into the deposit which is the stake in this lawsuit.

The claim for the Gruesners is that the husband was then indebted to the wife in the sum of $5,000, for money borrowed by the former from the latter in part, doubtless, for use of the Rochester Holding Company. Mr. Gruesner's testimony is that the amount was "five or six thousand dollars" borrowed "in different times" over a period of several years. Asked how many years, he replied, "Gosh, I couldn't remember." However indefinite some might consider that testimony, it was enough to sustain the jury's conclusion, if made, that the indebtedness existed. But there is no evidence that the corporation contracted any debt to Ida Gruesner. If there was such indebtedness it was no obligation of the Rochester Holding Company but only a simple debt from the husband, Jake, to his wife, Ida. Assuming its existence, the next step in the argument for plaintiff is that the deposit was made for the purpose of paying Mrs. Gruesner.

The bank did give her an ordinary passbook indicating that the deposit was in her name. There was also a document, signed, as indicated, by herself and Mr. Dabelstein, reading as follows:

"SPECIAL DEPOSIT

"June 10, 1929

"Mrs. I. Gruesner has today deposited, in special account in the Olmsted County Bank and Trust Company, the sum of Five Thousand Dollars, this amount to remain on deposit with the said Olmsted County Bank and Trust Company and cannot be withdrawn until all the liens, now on file with the Register of Deeds, Olmsted County, Minnesota, against the property owned by the Rochester Holding Company * * * have been fully discharged and satisfied.

"Mrs. I. Gruesner

"Accepted the above deposit as per agreement
Olmsted County Bank and Trust Company

"C. F. Dabelstein<br>"President"

■ The determinative question on the merits is whether the record supports the contention, essential to plaintiff's success, that title to the money passed to Mrs. Gruesner. Our answer, as matter of law, is negative. The simple facts are that Jake Gruesner, on all the evidence, was but attempting to use money of the Rochester Holding Company to pay his own debt to his wife. The mere expectations of Robitshek or either of the Gruesners concerning what ultimately should become of the money are unimportant. The check was payable to the Rochester Holding Company, and the title to the proceeds continued in it. There is no showing of just what authority Jake Gruesner had as president and general manager. It would take unequivocal and well authenticated authorization from the corporation to give effect to his attempt to use $5,000 of corporate funds in payment of his own obligation, even though incurred for benefit of the corporation.

There is no evidence of any such authority. Controlling decision is the fact of its absence. After the deposit was made and as long as the money remained in the bank, or rather as long as the resulting credit was outstanding, the property therein remained in the Rochester Holding Company, which is not shown to have parted with its title.

The act which plaintiff claims was defendant's conversion occurred July 25, 1929, when defendant applied the deposit in payment of a $5,000 demand note which it then held against the Rochester Holding Company. There is some evidence for defendant that Mrs. Gruesner checked out the balance for that payment. That claim was rejected by the jury. But there remains the admitted fact that defendant did charge the special deposit to Mrs. Gruesner and credit the company. In the absence of a check, that action can only be justified by the bank's right of offset. That right was unquestionable if title to the deposit remained in the Rochester Holding Company. 7 C. J. 653. For reasons already stated, we hold that it did.

■ There remains the question whether, notwithstanding continued ownership by the holding company, the bank lost its right of set-off by the written agreement concerning the deposit. The agreement we have quoted. It evidences little of contractual nature

that would not arise by implication from mere acceptance of the money by the bank, without more. It is a receipt—a declaration that "Mrs. I. Gruesner has today deposited." It says further that the money "cannot be withdrawn until all the liens" in question have been "satisfied." By so much, repayment is conditioned. The acceptance of the deposit "as per agreement" adds nothing of obligation not otherwise present. Branch v. Dawson, 36 Minn. 193, 30 N. W. 545.

Let contractual status be given the writing as a promise of repayment to the named depositor. It was yet impossible for the contracting parties, the bank and Mrs. Gruesner, to deprive the holding company of its ownership of the money. The property remained that of the holding company, and, so remaining, the way was clear to the bank's application of the credit upon the unquestioned and matured obligation of the real owner. The money having been disbursed for benefit of its owner, no obligation to Mrs. Gruesner remained. Naming her rather than the real owner of the fund as depositor did not add to or change the bank's obligation. Knowing the whole truth as it did, it would have been in serious predicament if it had paid the money to Mrs. Gruesner and then the Rochester Holding Company had demanded payment. Had the bank applied the deposit to a debt due it from Ida Gruesner, it would have been liable to a successful suit by the Rochester Holding Company had the latter resorted to law to recover the money.

There is no evidence that the holding company or either of the Gruesners were astonished by the liquidation of its debt through payment out of the deposit. Some interest due at the time was paid by Jake Gruesner himself with a check of the holding company. The resulting status remained unquestioned after the transaction. It is a circumstance of pertinence and interest, although no factor of decision, that the holding company seems to have become insolvent in the meantime and that defendant itself was for a time closed and escaped liquidation only by reorganization. During that period the Gruesners were not exerting themselves to protect or recover the $5,000 deposit.

It is helpful to put the case under the light afforded by a detached hypothesis. If, in his own name, A had deposited $5,000 of B's money, the bank would have had the right of offset to the extent that B was indebted to it on a past due note. It would have been poor banking not so to apply the deposit immediately the bank had knowledge that B was real owner of the fund and there was danger that his debt would not be otherwise liquidated. Danger or not, the right of offset would be unquestioned. Its effect as a legal right of the bank would not have been diminished had the bank known when A deposited the money that the property therein was in fact that of B. Its acquiescence in the deposit in A's name would not have deprived it of the right of offset. The question confronting the bank in such case is not lack of legal right, but rather and only the difficulty of furnishing the evidence, if litigation raises the question, of the facts justifying its action. In this case there is no evidence that ownership of the money deposited ever left the Rochester Holding Company.

Gordon v. Anthracite Trust Co. 315 Pa. 1, 172 A. 114, 93 A. L. R. 1160, is in point. There the question, decided in the affirmative, was whether a corporation could set off its deposit balance in the insolvent bank against the note of its president which the latter had signed and which. had been negotiated for the exclusive benefit of the corporation. The court said [315 Pa. 4]:

"As sustaining the right of set-off it is pointed out that the entire transaction * * * was a corporation matter, that the money was borrowed for the corporation, * * * and that the money borrowed on Burke's note was in fact so used, as was known to the officials of the trust company."

The further discussion in that decision illustrates how courts look "through names to the realities of the situation" in order to determine "the true owners" of a deposit in order to ascertain whether there is that "mutuality of right" and obligation which is prerequisite to set-off.

Although we hold against plaintiff, we agree with his estimate of the facts. His counsel say: "Our theory is that Mr. Dabelstein

thought he had a right to treat the deposit to the account of I. Gruesner as though it were a deposit to the account of the Rochester Holding Company, and that he did so without any authority from anybody." That is probably the correct appraisal of Mr. Dabelstein's action. If so, it is one case, at least, where a banker acting without advice of counsel has made his conduct exactly fit the law.

■ In justice to the trial judge, it should be said that the main point of this opinion was not presented to him. That brings us to the question whether the basis of our decision is improperly adopted because beyond the theory of trial. One of the grounds of the motion for new trial was "that the verdict herein is not justified by the evidence." For reasons we have stated, it is not so justified. The question whether a verdict is sustained by the evidence is sufficiently raised by an assignment of error in the motion for a new trial "which simply asserts that the verdict is not supported by the evidence." Caldwell v. First Nat. Bank, 164 Minn. 401, 405, 205 N. W. 282, 283. But that may be put aside. Litigants are usually bound in this court by the theory, however erroneous, upon which they have tried the case. Yet we are at liberty to base decision upon a ground not presented to the trial court "where the question raised here for the first time is plainly decisive of the entire controversy on its merits" and shows that "there is no cause of action, or a defense." C. M. & St. P. Ry. Co. v. Sprague, 140 Minn. 1, 5, 167 N. W. 124, 126. Compare Craig v. Baumgartner, 191 Minn. 42, 45, 254 N. W. 440, 441.

Bauman v. Metzger, 145 Minn. 133, 176 N. W. 497, illustrates the extremes to which this court may go in order to dispose of litigation on the merits, even on points not raised in the trial court. On the other hand, Duluth M. & N. Ry. Co. v. McCarthy, 183 Minn. 414, 236 N. W. 766, was but a refusal to consider here for the first time an alleged defense because the issue was expressly excluded by counsel for the defense in their conduct of the trial. That was distinctly not a case, such as this, where the verdict had no support in the evidence.

The only thing which prevents our directing judgment notwithstanding the verdict is the absence from the record of any motion by defendant for a directed verdict. Under 2 Mason Minn. St. 1927, § 9495, a party is not entitled to judgment notwithstanding the verdict without having moved for a directed verdict. Sayer v. Harris Produce Co. 84 Minn. 216, 87 N. W. 617; Timmins v. Pfeifer, 180 Minn. 1, 230 N. W. 260.

Our omission to discuss some assignments of error does not indicate decision concerning them one way or the other. The points involved will be for initial decision below if properly presented on a new trial. The present record is barren of anything showing that plaintiff is entitled to recover. Notwithstanding, all we can do is to reverse the order under review insofar as it denies a new trial.

So ordered.

