# DON HESS v. L. A. KOSKOVITCH AND OTHERS.[1]

February 5, 1954.

No. 36,139.

*Harold Jordan* and *Doherty, Rumble & Butler,* for appellant.

*Gallagher & Madden* and *Moonan, Moonan, Friedel & Senn,* for respondent.

CHRISTIANSON, JUSTICE.

Action is brought by plaintiff to recover damages for breach of express warranty and fraud against defendant L. A. Koskovitch and two other named defendants arising out of the sale of a milk condenser. At the close of plaintiff's case the trial court granted the

[1]Reported in 62 N. W. (2d) 806.

motion of one defendant for dismissal and at the conclusion of all the testimony denied motions for directed verdicts on behalf of defendant Koskovitch and the other defendant. The jury returned a verdict for $1,475 against defendant Koskovitch alone. Defendant Koskovitch, hereinafter referred to as defendant, appeals from the order denying his alternative motion for judgment notwithstanding the verdict or for a new trial.

On November 18, 1950, defendant sold a second-hand milk condenser, which is a rather large and complex machine used to condense milk products, to plaintiff for $2,800. It was constructed of mild steel with a thin inner lining of stainless steel. Although a few condensers of this type, referred to as "stainless clad," were manufactured during World War II as part of the effort to conserve critical war materials, the vast majority of milk condensers in this country are constructed of either stainless steel or copper. In the absence of a chemical or magnetic test, it is practically impossible to distinguish a stainless clad condenser from a stainless steel condenser unless its lining is worn through to the mild steel. However, defendant had been informed by the Rochester Dairy Cooperative, the original owner of the condenser in question, that it was a stainless clad machine. A stainless steel condenser is constructed of stainless steel, as distinguished from mild steel, and is worth substantially more and will last considerably longer than a stainless clad condenser.

Viewing the evidence in the light most favorable to the verdict, as we must, the following pertinent facts appear: Plaintiff, defendant, and one Eric Braun, who came along to assist plaintiff in the selection of a condenser, were driving to Rochester, Minnesota, to inspect the condenser in question when defendant informed plaintiff that he had not seen the condenser yet but that he would sell it for $2,800. Immediately upon their viewing the condenser at the Rochester Dairy Cooperative's plant, defendant feigned surprise and stated that he had expected it to be a copper condenser and to his amazement it was a stainless steel condenser and that, had he known it was stainless steel, he would not have offered to sell it for $2,800.

Plaintiff and Eric Braun were both surprised to learn that it was a stainless steel condenser because they had expected it to be a copper condenser. Neither plaintiff nor Braun, who was experienced in the dairy equipment field, was aware that stainless clad milk condensers had been constructed during World War II. Braun inspected the condenser but did not discover that it was not a stainless steel machine. He informed plaintiff that he thought it would suit plaintiff's purposes and that the price was not out of line. Relying on defendant's statement that it was a stainless steel condenser, plaintiff purchased the condenser and paid defendant $2,800 therefor.

Prior to his making any use of the condenser, plaintiff determined that it was too large for his purposes and advertised it for sale as a stainless steel condenser. When a prospective purchaser examined the interior of the condenser, large holes through the stainless steel lining were discovered. The prospective purchaser informed plaintiff that it was a stainless clad and not a stainless steel condenser and that condensers constructed of stainless steel would not have any large holes through the lining such as this one had. The superintendent of the Rochester Dairy Cooperative testified that the condenser was just about worn out. The maintenance supervisor for the dairy testified that something, possibly acid, had eaten the holes into the side of the condenser and into the weld seams around the bottom of the condenser and that it had been impossible to reweld these holes satisfactorily.

After expending $175 in sales expense, plaintiff finally sold the condenser for $1,500, making his total out-of-pocket loss by reason of the transaction $1,475, the amount the jury awarded him.

Defendant, in support of his contention that he is entitled to a new trial, asserts that the trial court's instructions to the jury on the measure of damages were erroneous. The instructions complained of read as follows:

"'* * * If * * * you find there was a breach of warranty then the measure of damage which you will apply is as follows: In case of breach of warranty of quality, in the absence of special circum-

stances, it is the difference in the value of the goods at the time of delivery to the buyer and the value they would have been if they had been as warranted. Now, as applied to this case, members of the jury—I will take the responsibility for it—it is the law of this case that if the goods had been as Mr. Hess claims they were warranted it would have been of the value of twenty-eight hundred dollars. * * * There is a dispute, members of the jury, as to the value of that tank, the actual value of that tank. Mr. Hess contends it was of the value of not to exceed fifteen hundred dollars, the actual market value. Mr. Koskovitch and the * * * [other defendant] take the position that even though there might have been a breach of warranty, which they do not admit, or even though there might have been fraud, which they do not admit, they take the position that actually the tank was worth twenty-eight hundred dollars anyway and consequently that Mr. Hess has sustained no damage. If Mr. Hess is entitled to damage you will, therefore, determine what was the fair market value, the actual value of the tank; you will subtract that from the twenty-eight hundred dollar figure. * * * For the purpose of this case, that same measure of damage can apply in the event you should find that there was a fraud perpetrated upon Mr. Hess, under the rules which I have given to you. You may apply the same measure of damage in either event or upon either theory."

Defendant contends that the trial court misstated the nature of the factual dispute between the parties in the foregoing instructions. He claims that he agreed that the actual market value of the condenser was $1,500 and that the dispute was whether the worn-out condition of the condenser was attributable to its stainless clad steel construction or to some other factor not within the scope of the alleged warranty. Thus, he argues that the jury should have been instructed that the measure of damages for breach of warranty was the difference in value, if any, due to the use of stainless clad steel rather than stainless steel in the construction of the condenser. Defendant maintains that the trial court's failure to so instruct the jury was an error with respect to fundamental law or controlling

principle, as he must, since he did not bring it to the trial court's attention by requested instruction or otherwise until his motion for a new trial. See, Rule 51 of the Rules of Civil Procedure. Plaintiff argues that the trial court stated the factual dispute existing at the time of the trial between the parties accurately and that defendant, with the aid of hindsight, is pursuing a completely new theory on this appeal.

We have carefully examined the entire record and find no support for defendant's contention that he disputed the causal relationship between the worn-out condition of the condenser and its construction of stainless clad steel. At no time was the trial court's attention called to the fact that there was such an issue in the case, and it is apparent from the evidence introduced, the conduct of the trial, and the instructions given that the trial court proceeded on the assumption that the causal relationship was undisputed and that no such issue had been raised.

Although there is a strong inference that the only reason the condenser in question was in such a worn-out condition was that it was constructed of stainless clad steel and not stainless steel, we agree that on this state of the record, had this issue been raised at the trial, it probably should have been submitted as a question of fact for the jury. Thus we come to the question of whether defendant, having acquiesced in the trial court's conclusion that it was not in issue, can complain for the first time in his motion for a new trial that the issue should have been submitted to the jury, relying upon Rule 51 for standing to challenge the instructions.

In Harris v. Eggermont, 196 Minn. 469, 265 N. W. 322, this court was faced with the converse situation under Mason St. 1927, § 9327, the predecessor of Rule 51. In that case, this court said (196 Minn. 473, 265 N. W. 324):

"* * * That is not the case, however, for the statute does not alter the rule that, with an exception recently noted (Skolnick v. Gruesner, 196 Minn. 318, 265 N. W. 44), cases will be disposed of on appeal within the limits of consideration fixed by the theory upon which they have been tried. 1 Dunnell, Minn. Dig. (2 ed. & Supps.

1932, 1934) § 401. * * * A litigant cannot tacitly consent to the submission of a fact issue to a jury and then, when disappointed in the verdict, obtain a new trial on the ground that it was error to submit it."

The corollary rule that a litigant cannot tacitly consent to the withholding of a fact issue from the jury and then, when disappointed in the verdict, obtain a new trial on the ground that it was error not to submit it has not been changed by Rule 51. Thus, where, as here, a party acquiesces in the statement of the factual dispute between himself and his adversary as contained in the court's charge, he is precluded from asserting on appeal that the theory upon which the case was tried and submitted to the jury was erroneous unless it conclusively appears from the record that the successful party was not entitled to recover. Rauhauser v. Owatonna Canning Co. 166 Minn. 487, 208 N. W. 194; S. Strong & Co. v. Knuteson, 91 Minn. 191, 97 N. W. 659; Kovaniemi v. Sherman, 192 Minn. 395, 256 N. W. 661; State v. Sprague, 201 Minn. 415, 276 N. W. 744; 1 Dunnell, Dig. (3 ed.) §§ 401, 407; 5 Dunnell, Dig. & Supp. § 7169. Since the record in the instant case sustains the verdict of the jury that plaintiff was defrauded and damaged thereby, it follows that defendant is in no position to urge that the trial court erred in denying his motion for a new trial.

Defendant's remaining assignments of error relate to that portion of the trial court's order which denied his motion for judgment notwithstanding the verdict. Since defendant's counsel conceded at the oral argument before this court that a jury question was presented on the issue of fraud, we need not consider these assignments of error.

For the foregoing reasons, we are of the opinion that the order appealed from should be affirmed.

Affirmed.

MR. JUSTICE FRANK T. GALLAGHER took no part in the consideration or decision of this case.