Milton M. Fieger et al., on Behalf of Themselves and All Other Tenants of Glen Oaks Village, Inc., Similarly Situated, Appellants, *v.* Glen Oaks Village, Inc., et al., Respondents.

Argued January 10, 1956; decided February 16, 1956.

*Max Goldweber* and *Paul H. Tannenbaum* for appellants. I. Plaintiffs have a cause of action against defendants in tort and in contract under the National Housing Act. (*Benner* v. *Atlantic Dredging Co.,* 134 N. Y. 156; *Case* v. *First Nat. Bank,* 59 Misc. 269; *Carlin* v. *New York, N. H. & H. R. R. Co.,* 71 Misc. 521; *Brinkmann* v. *Urban Realty Co.,* 10 N. J. 113; *Koenig* v. *Patrick Constr. Corp.,* 298 N. Y. 313; *Chotapeg, Inc.,* v. *Bullowa,* 291 N. Y. 70; *Schmidt* v. *Merchants Desp. Transp. Co.,* 270 N. Y. 287; *Lawrence* v. *Fox,* 20 N. Y. 268; *Strong* v. *American Fence Constr. Co.,* 245 N. Y. 48; *Seaver* v. *Ransom,* 224 N. Y. 233; *Rigney* v. *New York Central & H. R. R. R. Co.,* 217 N. Y. 31; *Farnsworth* v. *Boro Oil & Gas Co.,* 216 N. Y. 40; *Parkin* v. *Damen-Ridge Apts.,* 348 Ill. App. 428.) II. Plaintiffs have stated three causes of action against defendants under general principles of common law separate and apart from the National Housing Act. (*Wise* v. *Tube Bending Mach. Co.,* 194 N. Y. 272; *Clayton* v. *Farish,* 191 Misc. 136; *House of Westmore* v. *Denney,* 151 F. 2d 261; *Sweet* v. *State of New York,* 195 Misc. 494; *Abrams* v. *Allen,* 297 N. Y. 52; *Advance Music Corp.* v. *American Tobacco Co.,* 296 N. Y. 79; *Opera on Tour* v. *Weber,* 285 N. Y. 348; *Aikens* v. *Wisconsin,* 195 U. S. 194; *Rager* v. *McCloskey,* 305 N. Y. 75; *Rochette & Parzini Corp.* v. *Campo,* 301 N. Y. 228.) III. The Supreme Court has jurisdiction of the subject matter of all causes of action. (*Condon* v. *Associated Hosp. Service,* 287 N. Y. 411; *Great Northern Ry.* v. *Merchants Elevator Co.,* 259 U. S. 285; *Jones Co.* v. *Burke,* 306 N. Y. 172; *Hewitt* v. *New York, N. H. & H. R. R. Co.,* 284 N. Y. 117; *Clayton* v. *Farish,*

191 Misc. 136; *Barile* v. *Fisher*, 197 Misc. 493; *Wasservogel* v. *Meyerowitz*, 300 N. Y. 125; *Matter of Schmoll, Inc.*, v. *Federal Reserve Bank of N. Y.*, 286 N. Y. 503.) IV. A cause of action is sufficient if plaintiffs are entitled to any portion of the relief sought. (*Steisel* v. *Gratzer*, 272 App. Div. 673; *Bloom* v. *Gelb*, 227 App. Div. 619; *Vella* v. *United States Fidelity & Guar. Co.*, 245 App. Div. 339; *39th–40th Corp.* v. *Port of N. Y. Auth.*, 188 Misc. 657.) V. Plaintiffs should be given the opportunity to amend the complaint if insufficient facts are stated to constitute a cause of action. (*Morris* v. *Flint & Bradley*, 277 App. Div. 1025; *Douchkess* v. *Campbell*, 272 App. Div. 795; *Viola* v. *De Stefano*, 277 App. Div. 999.)

*Leonard G. Bisco, Charles Goldman, Harold P. Goldman* and *John E. Higgiston, Jr.*, for respondents. I. This State court may not either reduce or question the amounts of the maximum rents as fixed by the Federal Housing Commissioner or the amounts of the F. H. A.-insured mortgages as approved by the commissioner. (*Wasservogel* v. *Meyerowitz*, 300 N. Y. 125; *Parkin* v. *Damen-Ridge Apts.*, 348 Ill. App. 428; *Brinkmann* v. *Urban Realty Co.*, 10 N. J. 113; *Montana-Dakota Co.* v. *Public Service Co.*, 341 U. S. 246; *Kaskel* v. *Impellitteri*, 306 N. Y. 73; *Schieffelin* v. *Komfort*, 212 N. Y. 520; *Burbrooke Mfg. Co.* v. *St. George Textile Corp.*, 283 App. Div. 640; *Rosner* v. *Textile Binding & Trimming Co.*, 300 N. Y. 319; *Rosenbluth* v. *Sackadorf*, 190 Misc. 665; *Ultramares Corp.* v. *Touche*, 255 N. Y. 170.) II. Tenants of F. H. A.-insured projects have no standing to question or attack the maximum rentals fixed by the commissioner, the amounts of insured mortgages, the ground rentals payable by their landlord, the amounts of profits earned by the owner or the distribution thereof to the owner's stockholders. (*Stark* v. *Wickard*, 321 U. S. 288; *United States* v. *Emory*, 314 U. S. 423; *Perkins* v. *Lukens Steel Co.*, 310 U. S. 113; *Seiden* v. *Larson*, 188 F. 2d 661, 341 U. S. 950; *Clement Martin, Inc.*, v. *Dick Corp.*, 97 F. Supp. 961.) III. The tenants can have no possible rights where the owner has not exacted rents in excess of the maximum rentals fixed by the commissioner. It is not alleged and it is not the fact that the maximum rentals so fixed have at any time been exceeded. (*Rager* v. *McCloskey*, 305 N. Y. 75; *Globerman* v. *Grand Central Parkway Gardens*, 281

App. Div. 820; *Northridge Coop. Sec. No. 1* v. *32nd Ave. Constr. Corp.,* 286 App. Div. 422; *Choy* v. *Farragut Gardens,* 131 F. Supp. 609.) IV. Even if the tenants had the standing to maintain this action, they cannot question the amount of the mortgages because the ultimate costs proved to be less than the commissioner's estimates; the amounts of these mortgages are not determined by any estimates submitted by the mortgagor nor by the actual results of performance but only by the amount '' which the Commissioner estimates will be the necessary current cost '' of the complete project. V. There is nothing that an amendment could improve and the orders and judgment appealed from should be affirmed in all respects.

DESMOND, J. Plaintiffs sue on their own behalf and on behalf of the other tenants in eleven apartment houses, all owned in one form or another by the defendants considered as a group. The substance of the complaint is this: that by committing various kinds of wrongs defendants were able to procure the Federal Housing Authority (F. H. A.) to insure mortgage loans on these buildings in excessive amounts, with the alleged result that the rent schedules approved by F. H. A. authorities for these tenants were greatly in excess of reasonable rentals, on account of all of which plaintiffs demand money damages. All the defendants moved at Special Term, under subdivisions 1 and 4 of rule 106 of the Rules of Civil Practice, to dismiss the complaint on the ground that the court did not have jurisdiction of the subject of the action, and on the second alleged ground that the complaint does not state facts sufficient to constitute a cause of action. This motion, which was heard on the complaint alone, was granted, with an opinion holding, in substance, this: that this complaint cannot stand in any of its parts because it is a collateral attack on a determination of the Federal Administrator, and that for reasons stated this cannot be considered a *Lawrence* v. *Fox* (20 N. Y. 268) type situation. Plaintiffs appealed to the Appellate Division, Second Department, which affirmed with a brief memorandum. There was in that court one dissent, principally on the ground that these tenants are beneficiaries of the National Housing Act '' and have a direct right of action against the owner if the latter violates the act or the resolutions adopted thereunder '', citing a New Jersey case and

an Illinois case to both of which decisions we will refer hereafter. The dissent suggests that plaintiffs might in this action obtain a determination compelling defendants to file a new rent schedule and that the fixation of plaintiffs' damages might then await the fixation by Federal authorities of new rents based on the true facts.

This lengthy complaint sets up five causes of action. The first three are almost identical and will be called herein the "fraud" counts. The fourth count alleges, in effect, that defendants were guilty of "gross negligence" in overestimating the cost of construction of these buildings as a basis for obtaining $24,000,000 in mortgages. The fifth and last count says that defendants constructed the development in an inferior manner at a cost of several million dollars less than what the cost would have been if defendants had complied with the drawings and specifications. Section 608 of the National Housing Act (U. S. Code, tit. 12, § 1743, passed in 1942, but as here applicable amended in 1946) provided, at the time (1946–1949) when these loans were made, for the insuring by the Federal Housing Administration of mortgages on properties where preference would be given to tenancies by World War II veterans and their families, no mortgage to be more than $5,000,000 in principal amount and no mortgage to exceed in principal amount 90% of the Federal Housing Administrator's estimate of the necessary current cost of the whole property or project including land, architect's fees, taxes and interest accruing during construction, and similar incidental charges.

The first three causes of action taken together allege that defendants, during the years 1946 to 1949, submitted to F. H. A. applications for insurance of mortgages on these eleven properties, which applications estimated total cost of construction, according to the drawings and specifications accompanying them, at about $26,700,000 for all the buildings, and that defendants requested, and were granted by F. H. A., insurance for mortgages aggregating $24,000,000, as requested, on the eleven buildings. These causes of action go on to allege that, pursuant to F. H. A. regulations, defendants were required to file and did file with the administrator rental schedules approved by him and that, under the policies of procedures of F. H. A., said rents

were fixed at an amount which would cover operating expenses, mortgage payments, taxes and a reasonable return to the owners with the result that the maximum rent so established for plaintiffs and similar tenants bore a direct relationship to the amounts of the mortgages. It is then alleged in these parts of the complaint that the defendants estimated the total cost of all the properties at $26,700,000 and asked for and obtained insurance of mortgages of $24,000,000; that F. H. A. approved maximum rents based on those figures just given but that the total cost of constructing all these buildings was not $26,700,000 but $20,000,000 only; that the $24,000,000 in mortgages was about $4,000,000 in excess of actual cost of the buildings and incidentals; that this $4,000,000 was distributed to the individual defendants as owners of the defendant corporations, and that by reason of all this the annual rentals paid by all the tenants in these properties were excessive to the tune of about $360,000 per year. The second cause of action charges all this as a conspiracy to defraud. The differences between the first two causes of action and the third are not sufficient to require any analysis here. As stated above, the fourth cause of action describes these same alleged wrongs in terms of negligence and the fifth cause of action takes a somewhat different slant by alleging that completion at the reduced cost of only $20,000,000 was the result of failure to comply with drawings and specifications as filed, and of the construction of the buildings in an inferior manner.

There are two different but equally conclusive reasons why this complaint cannot stand. The first of such reasons is that these allegedly excessive rentals were fixed by the Federal Housing Administrator or Commission (this, of course, has nothing to do with the *emergency rent control* laws but is a different statutory setup). Such a determination of the F. H. A. authorities represents Federal governmental action by authorized Federal officers. As made clear by *Wasservogel* v. *Meyerowitz* (300 N. Y. 125), *Matter of Schmoll, Inc.,* v. *Federal Reserve Bank* (286 N. Y. 503) and older cases, the State courts have no power whatever to revise such official acts performed by Federal officials under authority of acts of Congress. In the *Wasservogel* case (*supra*) this court said flatly that when Federal authorities and Federal officers acting within their authority

have fixed rents, the State courts may not in any manner revise or review those determinations, directly or indirectly, and that all State court action is forbidden when it would amount to " an assertion of control of the manner in which the Federal rent office performed the function assigned to it by Congress ". We see no escape from that here. The Federal Housing Act, as above stated, authorized the Administrator, " in his discretion " (see § 608, subd. [b], par. [1]), to regulate rents. So empowered, he adopted rule or regulation section 280.30 under which he established maximum rents for these and similar properties. The maximum rents so established by him are still in effect and there is no assertion that the rents charged by defendants to these tenants were in excess of those maxima. We will assume with plaintiffs that this maximum rent fixation was for the benefit of tenants. There is nothing in that concept, however, which changes the settled law that the State courts cannot revise such an act of the Federal Government but must take heed of it and abide by it until it is changed by procedures, if any, established for such change. Such is the clear import of *Wasservogel* and the cases it cites.

The other and separate reason why this complaint is insufficient is found in a line of cases of which *Rosner* v. *Textile Binding & Trimming Co.* (300 N. Y. 319) is typical (see, also, *Rosenbluth* v. *Sackadorf*, 298 N. Y. 761; *Valcich* v. *Depot Warehouse Realty*, 308 N. Y. 892). All those cases, and some others in our court, hold that a tenant who claims to have been deprived of rights under rent laws by fraudulent misrepresentations made either to government authorities or to the tenant has no remedy by suit unless there be a specific statute giving him such remedy. The same or a quite similar idea is expressed as to commission-fixed electric utility rates in *Montana-Dakota Utilities Co.* v. *Northwestern Public Service Co.* (341 U. S. 246) and as to minimum wages fixed by the Secretary of Labor in *Perkins* v. *Lukens Steel Co.* (310 U. S. 113). As against this line of authority, plaintiffs cite to us two cases in other States, *Brinkmann* v. *Urban Realty Co.* (10 N. J. 113) and *Parkin* v. *Damen-Ridge Apts.* (348 Ill. App. 428). Both are readily distinguishable. Although each decision involves alleged overcharges of tenants in apartment houses financed with F. H. A.

mortgages, neither of these cited cases includes any attempt, by direction or indirection, to set aside the F. H. A. fixation of reasonable rents. In the *Brinkmann* case (*supra*) the landlord made what were in fact additional rental charges, clearly illegal, by setting up a rental agency actually owned by the landlord as a front for collecting additional moneys in the guise of commissions. In the *Parkin* case (*supra*) the rentals charged were held illegal because the landlord never secured F. H. A. approval of the rents at all but went ahead and made leases fixing rents which were held to be void because not approved by F. H. A.

Appellants argue that this complaint states a cause of action under the " Third Party Beneficiary " rule of *Lawrence* v. *Fox* (20 N. Y. 268, *supra*). For purposes of argument we will read the complaint here as attempting to set out such a claim. However, there are a number of reasons why the *Lawrence* v. *Fox* doctrine does not help plaintiffs. That doctrine makes actionable a promise made by a defendant upon valid consideration to a third person for the benefit of the plaintiff although the plaintiff was not privy to the consideration. Presumably, the contract that appellants rely on here is the contract between defendants and the F. H. A. Of course, that contract was in a sense made for the benefit of a large class of American citizens, including plaintiffs, who could not at the time find adequate housing. However, it is notable that even the *Brinkmann* case (*supra*), cited by appellants, says (p. 118) that the primary design of the National Housing Act as originally passed was " to stimulate building and increase employment ", citing *United States* v. *Emory* (314 U. S. 423, 430), although *Brinkmann* goes on to say that one of the significant purposes of the act was to benefit " low-income tenants by affording them suitable housing accommodations at reasonable rentals ". But, for all that, the making of this F. H. A. contract for the insurance by the United States of these mortgages was an act of government intended, as all such acts are supposed to be, to benefit some or all of the citizens. To carry out a public policy of the United States Government, the Administrator was authorized to facilitate the construction of buildings by insuring the mortgages taken by lending institutions on those buildings. The Federal Administrator was authorized by the same statute to approve a rent schedule, not

only to prevent the charging of unconscionable rents but also, we take it, to see to it that the rents are adequate to cover the expenses of operation, including the mortgage payments. Even if we were to distort such an arrangement into a simple contract for the benefit of these tenants; it would still be true that the complaint itself shows that plaintiffs are not actually suing on any such contract. Rather, they are attempting to set aside or bypass that contract since the rents they are paying are the rents fixed by the Administrator pursuant to that contract. Actually, of course, the only contracts that plaintiffs are parties to are their own leases with defendants, and the rents they are paying are the rents fixed in those leases.

Appellants have still another string to their bow in that they say this complaint can be held sufficient under *Advance Music Corp.* v. *American Tobacco Co.* (296 N. Y. 79) as discussed in *Rager* v. *McCloskey* (305 N. Y. 75) and *Rochette & Parzini Corp.* v. *Campo* (301 N. Y. 228). Appellants say that the *Advance Music* case (*supra*) makes actionable '' any intentional infliction of temporal damage '' but, of course, if that were literally true it would abolish all other forms and theories of action. The *Advance Music* theory does not go far enough to give these plaintiffs a cause of action on the facts they allege. What plaintiffs are alleging is not that the defendants set out to harm or wrong plaintiffs but that defendants defrauded the United States Government into legislative action fixing rents which action would not have been taken had not defendants so defrauded the Government.

The substance of all this is, as we see it, that plaintiffs cannot have any relief in the courts unless and until they are able in some fashion to set aside the rent schedules or unless some legislative body, such as the United States Congress, provides them with a remedy by suit. In all of this we are assuming, as we must on an appeal like this, the truth of all the allegations in plaintiffs' complaint.

In one of their points, plaintiffs say that if the dismissal of their complaint be affirmed here they should, nonetheless, be given by this court leave to plead over which was refused them by the courts below. It is clear that permission to plead over is discretionary but it is a particular form of discretion which

can be exercised by the Court of Appeals (*Fitzgerald* v. *Title Guar. & Trust Co.*, 290 N. Y. 376, 381; Cohen and Karger, Powers of the New York Court of Appeals, p. 646). However, as the *Fitzgerald* opinion itself says, it is only in " rare cases " that the Court of Appeals exercises such a power and I see no reason for exercising it here. In the *Fitzgerald* case plaintiffs, mistaking their remedy, pleaded a cause of action barred by the Statute of Limitations and our court wished to make it clear that our affirmance of the dismissal of the complaint did not prevent another suit arising out of the same facts but on a different theory. That concept has nothing to do with the present case.

The judgment should be affirmed, with costs.

Conway, Ch. J., Fuld, Van Voorhis and Burke, JJ., concur; Dye and Froessel, JJ., taking no part.

Judgment affirmed.