FRANCONIA VILLAGE COOPERATIVE, INC., Appellant, *v.* LINCOLN SAVINGS BANK OF BROOKLYN, Respondent.

Second Department, January 18, 1965.

*Golden, Wienshienk, Rosenthal & Mandel* (*Albert J. Rosenthal* and *Simon Eilenberg* of counsel), for appellant.

*Corner, Finn, Froeb & Charles* (*Mario Matthew Cuomo* and *Francis X. Keenan* of counsel), for respondent.

Christ, J.   At the heart of this appeal is plaintiff's attack on the propriety and legality of a banking practice whereby mortgagees imposed upon their mortgagors a flat service charge of 1½% of the principal of Federal Housing Authority insured mortgage loans, plus out-of-pocket closing expenses.

The plaintiff, Franconia Village Cooperative, Inc., made these two payments: $32,522 representing 1½% of its mortgage loan of $2,168,100 from defendant, the Lincoln Savings Bank of Brooklyn; and approximately $18,000 representing out-of-pocket expenses for title search and policy, mortgage recording tax and policy, attorney's fee and other incidental closing items.   Franconia seeks recovery of the $32,522 on the theory that such payment was violative of an FHA regulation governing this type of transaction.   Although the theory of recovery is asserted as mutual mistake or mistake on Franconia's part and fraud on the bank's part, one of the agreed facts was that: "If the aforesaid payment  *  *  *  was improper under these Regulations, neither the plaintiff, Franconia  *  *  *  nor the defendant  *  *  *  Bank had knowledge that this was so. [But] nothing in the preceding sentence is intended to imply that either party was or was not, as a legal matter, chargeable with notice of these Regulations or of their interpretation."

As of the time of the transaction, subdivision 9 of section I of the Administrative Rules and Regulations of the FHA, promulgated under section 213 of the National Housing Act (U. S. Code, tit. 12, § 1715e), provided: "9. The mortgagee may collect from the mortgagor the amount of the application and commitment fees provided for in this section and may charge the mortgagor an initial service charge to reimburse itself for the cost of closing the transaction, in an amount not to exceed one and one-half per centum (1½%) of the original principal amount of the mortgage."

Franconia, a residential housing co-operative corporation, was organized in 1953. A year earlier its promoter-builder had obtained a commitment from the bank for an FHA-insured mortgage loan in the sum of $2,168,100 at 4% interest. The commitment letter, dated May 6, 1952, read in pertinent part: "The borrower will be required to pay at the time of the first advance the amount of recording fees, mortgage and stamp taxes, costs of the survey and title search of a Title Company acceptable to us, and the sum of $2,200.00 for our attorneys' fees, and, in addition, will cause to be paid to the Bank as an initial service charge, an amount equivalent to 1½% of the full principal amount of the mortgage loan to be retained by the Bank in any event and out of which the Bank will not be required to pay any charges, expenses or fees of any nature whatsoever in connection with the loan or the project."

The first advance on the loan was made July 30, 1953, at which time Franconia's president authorized payment to the bank of "The initial service charge of 1½% of the principal face amount of the mortgage * * * and other costs [the out-of-pocket ones]." These payments were scheduled in the mortgagee's certificate to FHA, in Franconia's request to FHA for approval of the first advance, in the FHA project analysis, in the FHA financial requirements statement and in the building loan agreement.

The dispute concerning the $32,522 arose approximately a year and a half after the first advance, but before the final closing of the loan. Nevertheless, the bank agreed to make the final payment and close the loan on the understanding that Franconia's objection would survive.

There is no dispute concerning actual expenses incurred and paid to the bank in connection with the closing. Upon his examination before trial, which was a submitted exhibit, Michael J. Burke, an executive officer of the bank, explained that it was not possible to itemize the general costs which justify the imposi-

tion of a flat service charge of 1½% in accordance with the FHA regulation.

We are precluded from reviewing an issue or revising a determination made by a Federal regulatory body (*Fieger* v. *Glen Oaks Vil.*, 309 N. Y. 527). The FHA had an abundance of information before it with respect to this transaction; this 1½% service charge and all other charges were candidly disclosed to the FHA. That body exercised its power in authorizing these very payments and never once objected to actual payment being made; nor for that matter was any objection raised by FHA or any of the mortgagors in 18 other instances of FHA-insured mortgage loans made by the same bank, imposing the same charges. The approvals by FHA in this case were, at the very least, implicit approval of the general banking practice and of the specific charges imposed here.

In *Fieger* (*supra*) rent schedules were attacked as excessive; it was urged that the excessiveness was the result of fraudulent construction cost estimates, on the basis of which FHA approved the schedules. The Court of Appeals affirmed a dismissal of the complaint on the ground that once the rent schedules were approved by FHA pursuant to its own duly adopted regulations, there could be no revision or review directly or indirectly in the State courts (see, also, *Rubel* v. *Linden Towers Co-op. No. 6*, 39 Misc 2d 620).

In *Northridge Co-op. Section No. 1* v. *32nd Ave. Constr. Corp.* (2 N Y 2d 514, 528–534) the court, while adhering to the doctrine declared by it in *Fieger*, merely held that such doctrine may not be utilized to abrogate " The equitable jurisdiction of the State courts to enforce fiduciary obligations of directors and promoters " existing under State law, and that such jurisdiction was " not intended to be pre-empted by the National Housing Act " (pp. 531–532). The court expressly distinguished *Fieger* by reason of the fact that it presented no fiduciary considerations. Nor are there any such considerations now before us. Franconia and the bank never entered into a confidential relationship; rather, they were parties to an arm's length lucid financial transaction.

Franconia suggests that equitable considerations should bar the bank from retaining the flat 1½% charge plus actual out-of-pocket expenses, and that by its regulation the Federal agency could not have intended to authorize these multiple charges. In view of FHA's participation and approval; in view of the frankness of the bank in disclosing its intentions and demands at the earliest possible stage of the transaction; and in view

of the unmistakable understanding of these parties as to precisely what was demanded of each, I find no inequity. On the contrary, and assuming we had jurisdiction to do so, if we were to permit a mortgagor to repudiate a material cost element on a belatedly discovered and dubious legal technicality after capturing the benefits of the transaction, inequity would result.

Additionally, the reasonable and economic realities of a transaction of the type involved here support the conclusion reached at Trial Term. FHA recognized this practical aspect, as manifested in its own regulation and in its approvals in the instant case pursuant to such regulation. Mortgagors generally assume certain specified closing expenses. But there are also the unallocable and unidentifiable expenses in a transaction of this nature, e.g., the cost of servicing, the voluminous paper work, the attendance at meetings by officers, and the investigations and protections against future and unknown economic changes — all of which the mortgagor likewise must assume where the terms of the bargain specifically place that onus upon him.

In this case, all of the charges imposed by the bank were generally authorized by the FHA regulation; they were specifically approved by the FHA; and they were specifically agreed to by the parties themselves. Under the circumstances I will not and, indeed, cannot say that these charges were in any way irregular or illegal or unfair.

The judgment dismissing the complaint on the merits should be affirmed, with costs.

UGHETTA, Acting P. J., BRENNAN, RABIN and HOPKINS, JJ., concur.

Judgment affirmed, with costs.