## D. L. SWANEY AND ANOTHER v. J. S. CRAWLEY.[1]

May 12, 1916.

Nos. 19,779.—(62).

**Interference with contract by third person — evidence.**

1. In an action for the alleged wrongful and malicious interference with the contract relations existing between plaintiffs and a third person, causing the latter to break the contract, the evidence is *held* to support the verdict finding such wrongful interference, and to entitle plaintiffs to such damages as were the natural and proximate result therefrom.

**Damages — proximate result of interference.**

2. Certain damages alleged and claimed by plaintiffs *held* not the natural or proximate result of defendant's wrongful act, entirely too remote and not recoverable.

[1]Reported in 157 N. W. 910.

Note.—On the liability of a person in damages for inducing a third party to break his contract see notes in 21 L.R.A. 233; 16 L.R.A.(N.S.) 746; 28 L.R.A.(N.S.) 615; L.R.A. 1915F, 1076.

Action in the district court for Jackson county for breach of contract. The case was tried before Quinn, J., who when plaintiffs rested denied defendant's motion to dismiss the action, and a jury which returned a verdict for $700. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, in case the verdict was reduced to $570.80, defendant appealed. Reversed on condition.

*Knox & Faber,* for appellant.

*Albert R. Allen,* for respondent.

BROWN, C. J.

John A. Dowdall, a resident of the state of Illinois, owned a tract of 240 acres of land in Martin county, this state. At the time of the transaction here in question the land was in the possession of one Eisenmenger under an executory contract of purchase. Defendant was the agent of Eisenmenger for the purpose of making a sale of his rights in and to the land, and he called the attention of plaintiffs, residents of the state of Iowa, to the desire of Eisenmenger to sell, and finally induced them to buy his rights. The land was heavily incumbered and it required $13,640 to handle the transaction. Before entering into a contract with Eisenmenger plaintiffs consulted with Dowdall in reference to the matter, and procured from him an agreement to convey the land to them subject to a mortgage of $6,000, and to carry $4,000 of the purchase price at six per cent interest on a second mortgage. This took care of $10,000 of the purchase price, and of the balance thereof, as we understand the matter, $1,000 was to be "paid down," and $2,640 on March 1, 1914. After entering into this contract with the owner plaintiffs closed the transaction with Eisenmenger and acquired his rights under the executory contract. Defendant represented Eisenmenger in the matter, and the down payment of $1,000 was paid over to him, with which delinquent taxes against the land and over due interest on the mortgage debts were paid and discharged. The transaction was completed some time in June, 1913. In October, 1913, Dowdall conveyed the land to defendant subject to the Eisenmenger contract. This conveyance was a breach and violation of the Dowdall contract with plaintiffs, for thereby Dowdall disabled himself from performing the same. Defendant knew at the time he purchased the property from Dowdall, in October, 1913, of

the contract and the terms and provisions thereof; at least the evidence justified the jury in so finding the fact. The jury were also justified in finding that, to induce Dowdall to convey the land to him, defendant falsely stated that, in the negotiations plaintiffs had with Dowdall, they represented and were acting for defendant and not in their own behalf. This was not, however, the fact, and Dowdall testified that had he not understood that plaintiffs were representing defendant, a different deed would have been made to defendant; one protecting the rights of plaintiffs. And though it is clear from the evidence that the subject of defendant's purchase of the land was first suggested by Dowdall, the jury was justified in finding that defendant accepted Dowdall's offer, and completed the purchase with full knowledge of plaintiffs' contract, and upon representations that the same was procured in his interest. While the evidence upon this feature of the case is not over persuasive, for present purposes we hold it sufficient to justify the verdict. On April 4, 1914, defendant by letter informed plaintiffs that he had a warranty deed from Eisenmenger with instructions to deliver the same to them upon payment of $6,800. On May 18, 1914, Eisenmenger threatened to cancel the contract with plaintiffs, unless they performed the same on or before May 25, 1914. Plaintiffs thereafter completed the transaction, settled with Eisenmenger, and procured a deed of land from defendant. Defendant refused to recognize the Dowdall contract as binding upon him, and the terms of sale to plaintiffs embraced conditions other than those therein stated, which plaintiffs complied with. Plaintiffs thereafter brought this action to recover damages for the alleged wrongful and fraudulent act of defendant in causing Dowdall to break his contract. Plaintiffs had a verdict, and defendant appealed from an order denying his alternative motion for judgment or a new trial.

The assignments of error present several questions respecting the rulings of the trial court, and its charge to the jury, only one of which requires consideration, namely, the question of damages. The other assignments present no ground for reversal.

It may be conceded, for the purposes of the case, that the complaint states a cause of action for the wrongful and malicious interference by defendants with the contract relations existing between plaintiffs and Dowdall, causing the latter to break the contract, and that the evidence sup-

ports the verdict to that effect, entitling plaintiffs to recover such general damages as they may have suffered in consequence of defendant's wrong. Twitchell v. Glenwood-Inglewood Co. 131 Minn. 375, 155 N. W. 621; Ashley v. Dixon, 48 N. Y. 430, 8 Am. Rep. 559; Morehouse v. Terrill, 111 Ill. App. 460. But we are clear that the items of damage claimed in the complaint and awarded by the jury do not come within the rule applicable to such cases, and cannot be recovered. Such items presented to the court below the only basis for a submission of the case to the jury, and the court in its instructions limited consideration thereto as the only theory of recovery as presented by the complaint.

The general rule, applicable alike to actions in tort and for a breach of contract, limits the injured party to such damages as are the natural and proximate consequence of the wrongful act of the defendant. North v. Johnson, 58 Minn. 242, 59 N. W. 1012. The injury must be the immediate and not merely the remote consequence of the wrong, whether a breach of contract or wilful tort. 13 Cyc. 25. In the case at bar, one in tort, the injury suffered by plaintiffs in consequence of the wrongful act of defendant in causing Dowdall to break his contract with them, was the loss of the benefits secured by the contract, and they are entitled to recover such damages, and such damages only, as resulted naturally and proximately from that loss. In such an action it has been held, and the ruling seems sound in principle, that the injured party is limited, as a general rule, to such damages as might have been recovered for a breach of the contract itself. Knickerbocker Ice Co. v. Gardiner Dairy Co., 107 Md. 556, 69 Atl. 405, 16 L.R.A.(N.S.) 746. Of course the rule is broad enough, in a case where the character and reputation of the injured party is affected, illustrated by Faunce v. Searles, 122 Minn. 343, 142 N. W. 816, to include compensation for an injury of that character. And in a particular case, where express malice is shown, exemplary damages may perhaps be recovered. But we do not so decide. The question is not here presented. This case is controlled by the general rule stated, and whether plaintiffs may recover the items of damage claimed in the complaint must be determined thereby. No special damages are pleaded.

These items of damage are as follows: (1) As heretofore stated, by the contract plaintiffs entered into with Dowdall, the latter agreed to

convey the land to plaintiffs subject to a mortgage of $6,000, and to carry $4,000 of the balance of the purchase price on a second mortgage. In the settlement with defendant he refused to recognize this feature of the contract, and declined to accept a $4,000 mortgage as Dowdall had agreed, in consequence of which plaintiffs allege that they had to borrow that amount of money, and in doing so were compelled to pay to the lender a bonus of $400. (2) It is alleged in the complaint that in the settlement defendant required plaintiffs to pay him a commission of one dollar per acre for his services in negotiating and completing the sale of the land, a total of $240. (3) It was also alleged that by reason of the breach of the contract plaintiffs were delayed in completing the transaction, and were compelled to pay interest upon the purchase price during such delay. As we understand the matter this claim was abandoned by plaintiffs on the trial, and it requires no further mention. (4) Plaintiffs also claimed the sum of $100, which was secured to them by the broken Dowdall contract. (5) The last item, $200 for traveling expenses occasioned, as plaintiffs allege by the wrongful act in causing Dowdall to break the contract, does not appear to have been submitted to the jury, and the trial court was clearly right in not submitting the same.

These various items embrace all that the complaint presents as a basis for the verdict of $700, and we have only to determine if any thereof were proper elements of damage within the rule stated.

It is clear that only one of these five items comes within the rule that the damages must be the natural and proximate result of the alleged wrong of defendant. That item, the claim for $100 commission secured by the Dowdall contract, comes within the rule, and plaintiffs are entitled to recover the same. It appears that plaintiffs are real estate dealers, and prior to the contract with Dowdall had secured a purchaser for this land, and had agreed to convey to him when they acquired title. It would seem that this situation was presented to Dowdall, for he included in the contract an agreement to pay plaintiffs for effecting the sale to such purchaser the sum of $100. Dowdall never paid the amount and defendant refused to do so, though plaintiffs carried out the contract as per its terms. Plaintiffs therefore lost this

amount by the breach of the contract, and it resulted directly from wrongful act of defendant.

The other items, namely, the alleged bonus paid by plaintiffs to secure the money to take the place of the second mortgage which Dowdall agreed to accept, and the commission which defendant exacted for completing the transaction, clearly are not the direct, natural or proximate consequence of the wrongful act of defendant. Injuries of that character do not follow naturally in an unbroken sequence from the breach of such a contract, and are entirely too remote. North v. Johnson, 58 Minn. 242, 59 N. W. 1012; Hoffman v. Northern Pac. Ry. Co. 45 Minn. 53, 47 N. W. 312; Carsten v. Northern Pac. Ry. Co. 44 Minn. 454, 47 N. W. 49, 9 L.R.A. 688, 20 Am. St. 589; Hydraulic-Press Brick Co. v. Haynes Bread Co. 128 Minn. 401, 151 N. W. 140. The broken contract stipulated that Dowdall would carry the second or $4,000 mortgage at six per cent interest. If plaintiff had pleaded and shown on the trial that such a rate of interest was unusual for a second mortgage, and that by reason of custom or usage a greater rate was usually exacted on such securities, by reason of which they were compelled to pay such greater rate, no doubt the excess over the agreed six per cent would be a proper item of damage, resulting directly from the breach of the contract. 8 R. C. L. Damages § 31 (p. 464). But it cannot be said as a matter of law that a bonus of ten per cent exacted by a particular money lender, necessarily and usually results from the breach of such a contract, though the facts of a particular case might bring a claim of that kind within the rule. Such facts do not here appear, and it must be held that the bonus was not the proximate result of the wrongful act of defendant. The question in a case of this kind is, what particular benefit did the party whose contract is thus broken lose by the breach of the same? This does not include extra expense naturally incident to the making of a new contract upon the same subject matter with the wrongdoer, and for this reason the commission paid defendant for his services, exacted as a condition to the conveyance to plaintiffs, was not a necessary result of the breach of the Dowdall contract, and cannot therefore be recovered.

It follows that the verdict cannot stand for any amount in excess of $100, for there is no legal basis in the evidence for the recovery of more.

It is therefore ordered that the order denying a new trial be reversed, unless plaintiffs shall, within ten days after the cause is remanded, file their consent to a reduction of the verdict to the sum of $100. If such consent be filed, the order denying a new trial will be and is affirmed.