### HAROLD I. GOULD vs. ABRAHAM B. KRAMER.

Franklin.    September 16, 1925. — October 15, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Unlawful Interference. Evidence,* Secondary, Competency, Of damage. *Agency,* Existence of relation. *Damages,* In tort. *Pleading, Civil,* Declaration.

At the trial of an action of tort for damages resulting from alleged unlawful interference by the defendant with a contract of employment of the plaintiff, there was evidence warranting a finding that a letter purporting to have been sent by the defendant to the plaintiff's employer had stated that the plaintiff had "deserted a wife" and that he "was inducing" the defendant's daughter "to leave her home and come to live with him"; that such statements were false; that in consequence of the letter, the plaintiff's employer had written to the plaintiff ". . . we positively cannot be annoyed with such correspondence as we are being subjected to, and unless you can wholly protect us against such annoyance we would certainly prefer that you sever your connection with us at once"; that it was impossible for the plaintiff to protect his employer from such attacks and that he therefore resigned his employment. *Held,* that it was a question of fact whether the statements to the plaintiff's employer in the letter purporting to come from the defendant caused the plaintiff to lose his employment or whether, regardless of any coercion from the defendant, the plaintiff resigned of his own free will.

At the trial of the action above described, there was evidence that the defendant could not write and that his correspondence was attended to by a daughter younger than the daughter whom he accused the plaintiff with seeking to corrupt; that the defendant and the defendant's wife in his presence on the telephone and as a part of the same conversation had threatened to treat the plaintiff with violence and to prevent his continuing in employment; that the letter to the plaintiff's employer in another State was written by the second daughter, and that she was not within this Commonwealth at the time of the trial. The defendant testified that "perhaps" he signed the letter, and that he received a reply from the employer. There also was evidence that a letter was written in the handwriting of the second daughter of the defendant, signed by her in the name of the defendant's wife and directed to the plaintiff's mother, enclosing a letter from the plaintiff's employer to the defendant, and stating, "In reply to the letter which I have sent to the firm by which . . . [the plaintiff] is employed I have received the enclosed letter." It did not appear that the defendant's wife had written to or received any letter from the plaintiff's employer. *Held,* that

(1) Secondary proof of the contents of the letter to the plaintiff's employer purporting to come from the defendant was admissible;

(2) A finding was warranted that the letter to the plaintiff's employer was written by authority of the defendant;

(3) All the letters were admissible;

(4) The statements made on the telephone to the plaintiff by the defendant's wife in the defendant's presence were admissible.

The declaration in the action above described stated that by reason of the acts of the defendant "the plaintiff lost the benefit of his employment and was otherwise greatly damaged." The defendant did not move for further particulars. The judge admitted evidence as to mental suffering caused to the plaintiff by the acts of the defendant, and instructed the jury, "You may consider the injury, if any has been shown, to the mental feelings of the plaintiff which was the natural and necessary result of the discharge from the employment, if in fact there was mental suffering." The defendant alleged exceptions to the admission of the evidence but not to the instruction. *Held*, that the exception to the admission of the evidence must be overruled.

TORT, with a declaration as amended for unlawful interference by the defendant with a contract of employment of the plaintiff. Writ dated May 24, 1923.

In the Superior Court, the action was tried before *Whiting*, J. The defendant, after reading on the stand the letter of the manager of the plaintiff's employer to him, which referred to a letter from the defendant to the employer and is described in the opinion, was asked, "Is it true, what is in that letter?" and answered, "I think it is." He then was asked, "You know it is?" and answered, "I don't know whether true or not." The son of the defendant identified the handwriting of his sister Florence and stated that she wrote the whole of the letter, described in the opinion, purporting to be addressed to the plaintiff's mother and to be signed by "Mrs. A. B. Kramer," and that the signature was also in Florence's handwriting. The defendant's daughter Florence was absent from the jurisdiction and did not testify. Other material evidence is described in the opinion.

At the close of the plaintiff's evidence, the defendant moved to strike out evidence relating to motive and threats, which was offered in reliance upon an offer of proof made by the plaintiff's attorney that he would offer affirmative evidence that the defendant either wrote or caused to be written certain communications to the firm which employed the plaintiff. The motion was denied. At the close of all the evidence, the defendant moved that a verdict be ordered in

his favor. This motion also was denied. The defendant then asked for the following rulings:

"1. Upon all the evidence the plaintiff is not entitled to recover.

"2. There is no evidence that any acts of the defendant caused the plaintiff to be discharged from his employment.

"3. There is no evidence that any communications which may have been sent to the employer of the plaintiff was sent by the direction of or under the authority of the defendant and the defendant is not responsible for any unauthorized statements which may have been sent by any person to the employer of the plaintiff.

"4. There is no evidence that any communications were made to the plaintiff's employer by any employee of the Smith Detective and Research Bureau under authority of the defendant.

"5. There is no evidence that any communications were made by the Smith Detective and Research Bureau to the employer of the plaintiff in any way that contributed to or were responsible for the loss of the employment by the plaintiff."

"7. There is no evidence that any statements were made by the defendant or by his authority with malice.

"8. There is no evidence that the defendant sent or caused to be sent any communications to the plaintiff's employer with the intention and design of injuring the plaintiff in his business or causing him to lose his contract of employment."

"11. If the defendant resigned his position without having been asked to do so he cannot recover."

The rulings were refused. The jury, in answer to a question asked of them orally by the judge when they reported their verdict, stated that they found "that the statements written by the defendant to the Western Factory Insurance Association were false." The finding of the jury was for the plaintiff in the sum of $2,500. The defendant alleged exceptions.

*P. H. Ball, (J. T. Bartlett* with him,) for the defendant.

*C. Fairhurst, (W. A. Davenport* with him,) for the plaintiff.

BRALEY, J.   The plaintiff, a mechanical engineer of much experience in various employments, was on February 23, 1923, engaged at a yearly salary of $3,900 by the Western Factory Insurance Association of Chicago, Illinois, a company composed of forty-two insurance companies throughout the United States.   Its business was to inspect, and take risks of mercantile factory buildings.   The plaintiff's duties were to inspect the buildings periodically, and go through the factories, obtain design of buildings, and their location and make plans.   His connection with the company terminated April 3, 1923, and the present action is for damages on the ground that the defendant wrongfully procured his loss of employment.   The second and third counts of the declaration having been waived, the case was submitted to the jury on the first count, which alleges, "that the defendant, without justifiable cause, maliciously intending, and designing to injure the plaintiff in his business, wrote or caused to be written to the plaintiff's employer certain statements regarding the plaintiff; that said statements were untrue, which the defendant well knew and that by reason thereof the plaintiff lost the benefit of his employment and was otherwise greatly damaged."   The answer was a general denial, with averments that the statements were true and were published without malice.   The action as the judge correctly instructed the jury was not for publishing a libel.   The wrong charged is causing a pecuniary loss to the plaintiff without justifiable cause, and with a malicious purpose at the time to inflict it. *Walker* v. *Cronin*, 107 Mass. 555, 562.   *May* v. *Wood*, 172 Mass. 11, 14.   *McGurk* v. *Cronenwett*, 199 Mass. 457, 461, 462.

The manager of the company on April 4, 1923, sent the plaintiff a letter containing the following statements, "Since the receipt of the first letter from Mr. Kramer I have looked over your application for a position with us and interviewed the heads of the departments . . . and I am strikingly impressed with the thought that your education, experience and personality combined had equipped you more thoroughly for our work than has been the case with most people, including the writer, that have ever been connected with the association . . . .   To a certain extent your private life and

affairs do not concern us, although we must admit, based on our own experience, that if a man has domestic troubles or those that might be classed as simply sex, his efficiency in the business is bound to be affected. We do not care to pass judgment on anything of this nature that you have experienced in the past or plan for the future, but we positively cannot be annoyed with such correspondence as we are being subjected to, and unless you can wholly protect us against such annoyance we would certainly prefer that you sever your connection with us at once." The manager also had written the defendant acknowledging the receipt of, "Your letter of the 15th inst. in reference to Harold Gould . . . . You say that he has 'deserted a wife,' and it would be interesting to know whether he is legally divorced. And further, you say 'he is inducing your daughter to leave her home and come to live with him.' Do you mean that he is proposing they live together outside the law, or is he in a position to and is offering her legal marriage." The letter thus referred to being out of the jurisdiction of the court, secondary proof of its contents was competent. *Topping* v. *Bickford,* 4 Allen, 120.

The letter of the manager, which the defendant admitted having received, was transmitted to the plaintiff's mother, with a letter purporting to be signed by Mrs. A. B. Kramer. This letter and the signature were in the handwriting of Florence Kramer, a daughter of the defendant. In so far as material it reads, "In reply to the letter which I have sent to the firm by which Harold is employed I have received the enclosed letter. I am sending it to you hoping that you will answer it, for I am sure you can write more effectively than I." But it does not appear that Mrs. Kramer had written to, or received any letters from the plaintiff's employer, and the question, whether on the evidence of the defendant's son Florence acted at the defendant's request or with his sanction, was for the jury.

While it was undisputed that the plaintiff was married but did not live with his wife, and had made the social acquaintance of the defendant's daughter Irene, the jury were warranted in specially finding that the statements, that the

plaintiff had deserted his wife and was soliciting the defendant's daughter to live with him illicitly were false. The plaintiff testified, that he resigned because of the manager's letter. It could be found that it was impossible for him to protect the company from further attacks, and under such conditions the jury could say a formal notice of discharge was unnecessary. It was a question of fact whether the statements to the company caused his loss of employment, or whether regardless of any coercion he resigned of his own free will. The eleventh request, that "If the defendant [plaintiff] resigned his position without having being asked to do so he cannot recover," was sufficiently covered by the instructions. *Chipley* v. *Atkinson*, 23 Fla. 206, 220, cited by the defendant, is not in conflict.

The defendant however also contends that the statements were in letters written to the company by Florence, for whose conduct he is not responsible. The racial and religious differences between the parties need not be reviewed. The jury on conflicting evidence, which was admissible as tending to show his intent and state of mind, *Commonwealth* v. *Trefethen*, 157 Mass. 180, *Inness* v. *Boston, Revere Beach & Lynn Railroad*, 168 Mass. 433, could find, that the defendant had said, "I will kill him, I will leave no stone unturned, . . . every position he gets I will knock him out of. . . . I am going to get him regardless of anything. . . . We'll get him if he goes to the end of the earth." The defendant called the plaintiff by telephone, and accused him of concealing his daughter, and "that he was coming to the plaintiff's house in Lynn to get her and to get the plaintiff to locate his daughter and then do away with him." During the conversation Mrs. Kramer intervened, and after calling the plaintiff a vile name, said, "If you don't keep away from my daughter I will be out there with Mr. Kramer and help him to get you." The conversation was immediately resumed by the defendant who said, "I'll come to Lynn and kill you if it costs me my life." The use of the telephone does not differentiate this conversation from a conversation between Mrs. Kramer and the plaintiff in her husband's presence in which with the defendant's acquiescence she joined in his accusations. It was

properly admitted. The defendant had caused the plaintiff to be investigated by a detective bureau, and the jury could find that while Florence was not shown to have been personally hostile, the defendant had a settled feeling of ill will, and such finding, in connection with the finding that the statements were false, justified a conclusion that if the defendant was chargeable he acted without probable cause and pursued the plaintiff for the express purpose of depriving him of employment. The inquiry accordingly is, whether there was any evidence warranting a finding that the defendant signed or authorized the writing and sending of the accusing letter or letters. In answer to interrogatories and also in testifying as a witness, he stated that he could not write English and that Florence attended to his correspondence; but at the trial he read the letter he received from the manager. In further answers he stated, that, while he did not communicate with it, the letters to the company were written in the early part of January and February, 1923, by Florence. "I cannot remember whether I signed my name to the letter or not." And at the trial, while he denied such knowledge, the defendant also testified, that he was not sure whether he signed the letters, and that "Perhaps [he did] not." "I never signed any letter that she wrote as far as I know. Perhaps I did. I might have, as sometimes she writes a letter and I trust my daughter. . . . Sometimes I put my name on the letters she writes for me, sometimes no." The fact that he never disclaimed the statements quoted in the letter of the manager but remained silent, could also be considered. *Warner* v. *Fuller*, 245 Mass. 520. In view of the defendant's avowed purpose, and the evidence relating to the origin and nature of the correspondence, the jury were properly left to determine under all the circumstances whether he was responsible for the letters which were in accordance with, and in fulfilment of that purpose. If the jury so found, there was no error in the admission of the letter of the manager to the plaintiff. *Reed* v. *Ashburnham Railroad*, 120 Mass. 43, 47. *Ayer* v. *R. W. Bell Manuf. Co.* 147 Mass. 46. *Lopes* v. *Connolly*, 210 Mass. 487, 494.

The evidence as to the plaintiff's mental suffering was

admissible when introduced on the measure of damages. The second count alleged, that "he suffered great mental distress," and the first count, that he "was otherwise greatly damaged." But, even if the second count did not go to the jury, the defendant had not moved for specifications under the first count, nor did he except to the instructions, "You may consider the injury, if any has been shown, to the mental feelings of the plaintiff which was the natural and necessary result of the discharge from the employment, if in fact there was mental suffering."

The motion for a directed verdict, and the first request that upon all the evidence the plaintiff was not entitled to recover, were denied rightly, and, no error appearing in the admission of evidence or in the refusal of the other requests, the exceptions must be overruled.

*So ordered.*