Argued and submitted May 4, reversed October 20, 1981

# MOONEY,
*Petitioner,*

*v.*

# JOHNSON CATTLE CO., INC. et al,
*Respondents.*

(TC 15467-L,   CA 16999,   SC 27577)

634 P2d 1333

Max S. Taggart, II, of Taggart & Taggart, Ontario, argued the cause and filed a brief for petitioner.

J. Burdette Pratt, Nyssa, argued the cause for respondents. With him on the briefs were Stunz, Fonda & Pratt, Nyssa, and Gigray, Miller, Downen & Weston, Caldwell, Idaho.

Before Denecke, C.J., and Tongue, Lent, Linde, Peterson, and Tanzer, Justices.

LINDE, J.

Tongue, J., filed a specially concurring opinion.

Peterson, J., filed a dissenting opinion.

## LINDE, J.

Plaintiff and defendants are cattle buyers. When plaintiff contracted to buy 550 head of steers from a third person for immediate resale, defendants caused the seller to breach this contract by buying the same cattle at a higher price, leaving plaintiff for a time unable to deliver cattle to his buyer. Plaintiff brought action for interference with his purchase contract, seeking damages for loss of reputation and for mental anguish suffered as "a direct and proximate result" of defendant's interference, as well as punitive damages. A jury awarded plaintiff $6,500 damages for mental anguish only.

The Court of Appeals reversed, holding that interference with contractual relations is not one of the torts in which damages for mental suffering may be awarded in the absence of physical injury. 49 Or App 959, 621 P2d 93 (1980). We allowed review to consider the right to such damages in a tort action for inducing breach of contract.

Upon examination, the question proves to be far from settled. There are more assertions in the secondary commentary than actual decisions from which a general rule may be drawn. In England, it is said that the "primary protection afforded by the tort ushered in by *Lumley v. Gye*,[1] is against business losses: "business men cannot complain of injured feelings alone." Mayne & McGregor on Damages § 943 (12th ed 1961). Another text of the same vintage, to the contrary, states that a plaintiff "will often receive greater damages in tort" than for the breach of contract; "he can obtain exemplary damages, invoke the rule that intentionally caused damages are recoverable for an intentional tort, and obtain damages for loss of reputation and injured feelings." Street, Principles of the Law of Damages 252 (1962). Neither work cites authority for either proposition.[2] As to American law, Sedgwick stated in

---

[1] 118 Eng Rep 749 (1853) (action for maliciously interfering with employment relations not confined to master-servant relationship).

[2] Mayne & McGregor, *supra,* quote from *Pratt v. British Medical Ass'n,* [1919] 1 KB 244, 281-282, which held that physicians who were victims of a boycott,

"'are not limited to actual pecuniary damages suffered by them. . . The Court or jury, once actual financial loss be proved, may award a sum appropriate to the whole circumstances of the tortious wrong inflicted. . . I

a single sentence that "for maliciously procuring the breach of any contract the measure of damages is ordinarily the same as it would be in an action for breach of the contract itself." 2 Sedgwick on Damages § 470a at 900 (2nd ed 1912).[3] A more detailed student note in 1930 reported that some courts deemed the contract rule to be the proper measure of tort damages for inducing a breach,[4] while others stated that the tort defendant was liable for all resulting damages, by analogy to damages for intentional interference with tangible property, and a third group applied a "proximate" injuries rule comparable to that in negligence cases. Note, *Damages Recoverable in an Action for Inducing Breach of Contract*, 30 Col L Rev 232 (1930). Many of the early cases involved interference with plaintiff's employment, and in that setting Massachusetts decisions allowed recovery for "injured feelings," *Gould v. Kraemer*, 253 Mass 433, 440, 149 NE 142 (1925), *Doucette v. Salinger*, 228 Mass 444, 117 NE 897 (1917), or reputation, *DeMinico v. Craig*, 207 Mass 593, 94 NE 317

----

cannot ignore the deliberate and relentless vigour with which the defendants sought to achieve the infliction of complete ruin. I must regard not merely the *pecuniary loss sustained by the plaintiffs but the long period for which they* respectively suffered humiliation and menace.' "

The tort pleaded in that case was not, however, interference with a contract. *See also Rookes v. Barnard*, [1964] 1 All E.R. 367, a tort action of "intimidation" by an employee discharged as a result of union strike threats against his employer, in which Lord Devlin said that the measure of damages might take into account "the inconvenience caused to him by the change of job and the unhappiness maybe by a change of livelihood." *Id.* at 407.

[3] Sedgwick cited a single case, *Knickerbocker Ice Co. v. Gardiner Dairy Co.*, 107 Md 556, 69 A 405 (1908). *Id.* at 900, n. 252 (manufacturer liable for inducing dealer to break contract with customer so as to obtain direct sale; no exemplary damages unless defendant's purpose was to injure plaintiff).

[4] The Minnesota decision in *Swaney v. Crawley*, 133 Minn 57, 157 NW 910 (1916) is one precedent commonly cited for the proposition that "the injured party is limited, as a general rule, to such damages as might have been recovered for a breach of the contract itself," although the court went on to state that "the rule is broad enough" to include compensation for an injury to reputation as well as exemplary damages. 133 Minn 60. The inclusion of the phrase "as a general rule" in the quoted passage is characteristic of most statements concerning the damages recoverable in this tort action.

The significance of a tort or contract measure of damages for recovering damages for mental distress in a dispute between the contracting parties in a business context is discussed in *Farris v. U. S. Fid. and Guar. Co.*, 284 Or 453, 456, 458-465, 587 P2d 1015 (1978) (failure of a liability insurer to assume duty to defend the insured does not support award of damages for emotional distress).

(1911). The note reported only a few other decisions on either side of that issue. 30 Col L Rev at 237, n. 27.

More recently, Dean Prosser briefly repeated the same classification, adding a few more recent citations but none on the issue of recovery for mental anxiety or distress. Prosser's own preference was for the measure of damages common to other intentional torts to persons or property. Prosser, Law of Torts § 129, at 948-949 (4th ed 1971). His position was adopted by a California appellate court in *Duff v. Engelberg,* 237 Cal App 2d 505, 47 Cal Rptr 114 (1965), in which defendants motivated by racial prejudice had caused a seller to renege on a contract to sell a residence to plaintiffs. Professor Dobbs's treatment of the law of damages states that damages for mental suffering, loss of reputation, and punitive damages, though normally not available for breach of contract, "are pretty well accepted as recoverable against the tortious inducer of that breach"; however, the statement is not supported by any citations. Dobbs, Remedies § 6.4, at 463 (1973). A number of other commentators have reviewed the three different measures of damages drawn from actions for breach of contract, intentional torts, and negligence without adding much information on the subject of mental or emotional distress. *See Developments in the Law-Competitive Torts,* 77 Harv L Rev 888, 967-969 (1964); *Note, Interference with Contractual Relations in New England,* 38 B U L Rev 285 (1958); *Comment, Interference With Contractual Relations: A Common Measure of Damages,* 7 Santa Clara Law Rev 140 (1966).

The original Restatement of Torts, in section 766, stated that one who purposely causes a third person not to perform a contract with another "is liable to the other for the harm caused thereby." The quoted phrase appeared to measure the range of liability entirely by causation in fact, but the comments to section 766 said nothing further on the issue of damages. The Restatement of Torts (Second) added a new section 774A which states that the damages recoverable in an action for interference with contractual relation include the pecuniary loss of the benefits of the contract, other consequential losses, and "emotional distress or actual harm to reputation, if they are reasonably to be

expected to result from the interference."[5] The record of the adoption of this statement by the American Law Institute, however, reflects no great conviction that it is a "restatement" of an established rule.[6] In sum, the state of the authorities encourages us to examine the question anew.

Search for a principle may take its starting point either in the decisions allowing or denying damages for mental distress in other tort actions, or in a narrower focus on the characteristics of the interference tort. Taking the first tack, defendants brief *Douglas v. Humble Oil,* 251 Or 310, 445 P2d 590 (1968), in which the torts were a trespass to a home and conversion of personal property, *Fredeen v. Stride,* 269 Or 369, 525 P2d 166 (1974), which involved a veterinarian's conversion of a dog, and *Edwards v. Talent*

---

[5] "§ 774A. Damages

"(1) One who is liable to another for interference with a contract or prospective contractual relation is liable for damages for

"(a) the pecuniary loss of the benefits of the contract or the prospective relation;

"(b) consequential losses for which the interference is a legal cause; and

"(c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference.

"(2) In an action for interference with a contract by inducing or causing a third person to break the contract with the other, the fact that the third person is liable for the breach does not affect the amount of damages awardable against the actor; but any damages in fact paid by the third person will reduce the damages actually recoverable on the judgment."

[6] The original Reporter, Dean Prosser, submitted the new § 774A in 1969 with the note: "There is actually very little case law on subsection (1)." Restatement of Torts (Second), Tentative Draft No. 14 (1969) at 86. When the draft again came before the Institute in 1977, the subsequent Reporter, Dean John W. Wade, said with regard to damages for emotional distress from interference with contractual relations:

"I admit that when I first saw that, I felt rather surprised. Yet when I looked at the cases—they were mostly older cases, I must admit—there were a number of cases indicating that this could be true. I left it alone. . . but it is open before you, and if you want to eliminate that aspect, I am amenable."

There was a motion to eliminate damages for emotional distress from § 774(A)(c) as being "too easily trumped up." In response to a question as to the "weight of authorities in the cases," the Reporter replied that it was "sort of hard to tell." Justice Braucher of Massachusetts said that he was "as much against damages for emotional distress in this case as in other cases" but saw no reason "why this one is that much different." The motion to strike damages for emotional distress from § 774A failed by a vote of 64-44. The American Law Institute, Proceedings, 54th Annual Meeting (1977) at 429-431.

*Irrigation District,* 280 Or 307, 570 P2d 1169 (1977), a case of negligent flooding of land. From these they argue the general propositions that damages are allowed for mental distress only when this distress is a direct and predictable result accompanying a tangible injury, or aggravated by the quality of defendant's wrongful conduct, and that without a physical injury to person or property only a few torts are specifically designed to recognize emotional injuries, such as invasion of privacy, *see Hinish v. Meier & Frank Co.,* 166 Or 482, 113 P2d 438 (1941) or intentional infliction of emotional distress, as in *Turman v. Central Billing Bureau,* 279 Or 443, 568 P2d 1382 (1977). The Court of Appeals thought itself bound to reverse the award of damages for mental distress by what was said in these cases and in *Melton v. Allen,* 282 Or 731, 580 P2d 1019 (1978), which denied such damages for a trespass to plaintiff's automobile.[7]

These and other cases may have left some question about the significance of various factors to liability for mental distress, for instance whether this liability results from defendant's intent, as distinguished from recklessness or negligence, *compare Melton, supra,* with *McEvoy v. Helikson,* 277 Or 781, 562 P2d 540 (1977), or from the "direct and natural" causation, that is to say predictability, of the mental distress, *see Fredeen v. Stride, supra,* and *Douglas v. Humble Oil, supra,* and whether "aggravated circumstances" are relevant to liability for such distress

---

[7] The court quoted a passage in *Melton* stating that redress for mental disturbance without accompanying physical injury has been allowed only in cases involving "intentional acts of a flagrant character under most unusual facts and circumstances," "a serious invasion of the plaintiff's right and not feigned," and "special circumstances of considerable magnitude." 282 Or at 736. These phrases were the court's description of prior cases, not criteria that a jury is to be instructed to apply in evaluating a case submitted to it. To the cases cited in the text one may add *Macca v. Gen. Telephone Co. of N.W.,* 262 Or 414, 495 P2d 1193 (1972), which sustained a recovery for mental distress caused by frequent telephone calls due to a listing error. The court there stated:

> "Allowing recovery for mental suffering and anguish unaccompanied by physical injuries under the circumstances of the present case is in accord with previous decisions of this court. Where an independent basis of liability exists, irrespective of whether there existed physical injuries, recovery has been uniformly allowed for mental suffering and anguish." [citing *Douglas v. Humble Oil,* and other cases.]

262 Or at 420, n. 1.

because of defendant's greater culpability for acts of "a flagrant character," *Melton v. Allen, supra,* or because defendant's "aggravated conduct" contributes "evidence of genuine emotional damage," *Fredeen v. Stride, supra.* As the court stated in *Edwards,* "[t]he law involving recovery for emotional distress generally is confused and perhaps in need of rethinking by the courts." 280 Or at 310, n. 4.

The concept of "tort" is vulnerable to this confusion because the one word is used to encompass both the defendant's wrong and the injury entitling plaintiff to redress. When the focus is on defendant's conduct, an intentional wrongdoer often seems more deserving of liability than a careless or innocent one. From the plaintiff's perspective, the injury that the defendant has caused may be equally severe in either event, unless plaintiff's knowledge of defendant's attitude in fact magnifies plaintiff's distress. Nevertheless, as in some formulations of recovery for mental distress from trespass or conversion, the double focus sometimes leads to carrying the factor of defendant's culpability from the definition of the tort into the measure of plaintiff's damages as well. *See* Restatement of Torts, § 927, Comment 1, *quoted in Fredeen v. Stride, supra.*[8] As already stated, however, the formula actually employed in that decision and in *Douglas v. Humble Oil, supra,* rested the inclusion or exclusion of damages for mental distress not on the defendant's motives but on whether such distress was a common and predictable result under the circumstances of the kind of conversion involved. In the tort of interference with another's contract, the defendant's knowledge and intent are required elements of the tort itself. *See American Sanitary Service v. Walker,* 276 Or 389, 394, 554 P2d 1010 (1976), *Wampler v. Palmerton,* 250 Or 65, 73, 439 P2d 601 (1968).[9] The question is whether it follows that the liability for damages to which it gives rise necessarily is the same as in other intentional torts.

---

[8] "If the deprivation is the legal cause of harms to the feeling, damages may be allowable for such harms, as where the defendant intentionally deprives the plaintiff of essential household furniture which humiliates the plaintiff, a result which the defendant should have realized would follow."

4 Restatement of Torts § 927, Comment 1 at 657.

[9] *See generally Top Service Body Shop v. Allstate Ins. Co.,* 283 Or 201, 205-210, 582 P2d 1365 (1978), as to the plaintiff's burden of proof in interference cases.

The court appeared to adopt that position in *Wampler v. Palmerton, supra,* although it reached no holding on damages, because the court concluded that no tort had been proved. In the course of an introductory review of the interference tort, the opinion stated:

> "The relief granted is of the broad type available in intentional tort actions and includes recompense for mental suffering, damage to reputation, and punitive damages. It therefore affords the relief which would have been recoverable from the party breaching the contract and also for the less tangible personal harms such as those sought in the instant case." (Footnotes omitted.)

250 Or at 73. This passage, however, must be read in its context. It was preceded by a discussion of the expansion of the tort from interference with employment, as in *Lumley v. Gye, supra,* to other contractual relationships.

> "The interest protected by the interference with contract action is the interest of the individual in the security and integrity of the contractual relations into which he has entered. Economic relations are controlled by contract and the public also has an interest in maintaining the security of such transactions. Therefore the law provides protection." (Footnotes omitted.)

*Id.* at 73. Commercial or economic interests, of course, are only one kind of interest secured by the protection that the law affords to contractual relations. They are the kind involved in *Wampler* and in this case. The interest in one's occupation, as in the Massachusetts cases previously cited, or in one's choice of a home, as in *Duff v. Engelberg, supra,* often goes beyond the merely economic interest in regular wages or in an advantageous price to include such noneconomic values as personal associations, love of a place, and pride in one's work that add up to one's sense of identity.

We think, therefore, that recovery of damages beyond pecuniary loss from interference with a contract does not depend only on the presence of intentional interference for an improper objective or by wrongful means, along with causation. *See Top Service Body Shop v. Allstate Ins., Co.,* 283 Or 201, 582 P2d 1365 (1978). Damages for noneconomic injury depend also on what kind of contractual arrangement is disrupted by defendant and how the claimed injury

relates to that kind of arrangement. The mental distress, injured reputation, or other consequential harm not only must have occurred, and have resulted from defendant's interference, it also must have been an injury of a kind that should have been expected as a common and predictable accompaniment of disrupting the type of relationship with which the defendant interfered.[10]

■    This analysis corresponds to the rule formulated in the Restatement with one qualification. To recover either for emotional distress or for harm to reputation in an action for interference with contractual relations, injury of that kind must be a common and predictable result of disrupting the *type* of relationship or transaction involved rather than a result "reasonably to be expected" in the particular situation, as seems to be the import of section 774(A)(1)(c), *supra,* n. 5. The defendant's wrong is intentional, not a default of foresight. There are many kinds of contractual relations, however, just as there are many different settings for trespass or conversion. Compare *Douglas* and *Fredeen, supra,* with *Hall v. Work,* 223 Or 347, 354 P2d 837 (1960). The claimed injury must be typical of the kind of contractual relationship involved in the case in order to come within the interests that the tort duty of noninterference is designed to protect, whatever other theory of recovery may also be available to the injured party.

As already stated, these typical interests can differ when the disrupted relationship is employment, or a consumer purchase of a particular home or unique chattel, or a commercial transaction between entrepreneurs, or perhaps a wholly nonfinancial agreement. For instance, when the tort is applied in order to secure contractual arrangements

---

[10] There is a temptation here as elsewhere in tort law to state this relationship in terms of "direct" or "proximate" as distinguished from remote causation. Thus, plaintiff in this case pleaded that his reputation as a reliable cattle dealer was damaged and he endured mental suffering as "a direct and proximate result of the interference of the defendants." But it is not a question of causation. If the harm occurred in fact, it makes little sense to dispute whether the occurrence was "natural" or "unnatural." Consideration whether the kind of injury claimed was a common and predictable feature of the type of disrupted relationship at issue more accurately describes what is called "direct and natural" in *Douglas* and *Fredeen* or "legal cause" in Restatement of Torts (Second) § 774(A)(1)(b), *supra,* n. 5.

and opportunities in the general economy, mental or emotional distress will not be a characteristic result of interference between corporate enterprises. The same may or may not be true of business dealings characteristically carried on by individuals.

It can be argued that in ordinary commercial dealings even among individuals, the tort is designed to protect only business interests—the purely economic interests of Adam Smith's abstract "economic man" who, as suggested in Mayne & McGregor, *supra,* "cannot complain of injured feelings alone." Upon consideration, we reject that view. Commerce is too broad a category to sweep all kinds of transactions under a single rule protecting only pecuniary interests against an outsider's wrongful interference. Established customs and expectations may vary in one economic sector from those in an entirely different one. The loss of some fraction of all deals, whether induced by a competitor or by other intermeddling, may be a common experience in some branches of business, though the plaintiff in the particular case tends to become upset. In other branches, such interference may universally be recognized as a rare breach of custom and a predictable source of shock and dismay. Again, mental distress has been included in damages for interference with one's employment; but too many crafts and trades rely on independent contracts as well as on contracts of employment, and the distinction is too tangential to the likelihood of anxiety and distress, to allow recovery for such consequences when the interference is with employment but exclude it for interference with business contracts as a matter of law. Rather, it remains open to show that they are common and predictable consequences of such interference in the type of business setting involved.

■ Even when serious anxiety and frustration are typical and predictable effects of disruptive interference in a business setting, however, damages are confined to those effects. Recovery extends only to the mental or emotional distress involved in dealing with the disruption itself. By this test, the stress of finding another buyer or source of supply, of restoring confidence in the future performance of the business, or in case of more fatal interference, of selling or liquidating the enterprise could give rise to damages;

distress at personal consequences such as a sacrificed vacation, financial stringency, or family stresses would not.

In this case the applicable rule was discussed at length in the course of argument on defendant's motion for dismissal at the conclusion of plaintiff's case (more accurately a motion for directed verdict, ORCP 60), and on their motion for judgment notwithstanding the verdict. The trial court concluded that contractual interference is not the kind of tort in which "as a matter of law" there is such likelihood of emotional distress that the jury can be instructed to include it in an award of general damages, but rather that the instructions would be that a higher standard of proof would be required. The instructions actually given were not challenged on appeal and are not before us. Neither does the appeal present an issue concerning the adequacy of evidence whether nonpecuniary injuries typically can be expected to result from interfering with contracts between cattle dealers. Rather, defendants argue that even assuming that damages for mental distress resulting from interference with a contract could be allowed at all, there was insufficient evidence of "aggravated conduct" by defendants to justify submitting plaintiff's claim for such damages to the jury.

Under the test we have set forth in this opinion, recovery for mental distress in this tort hinges on factors other than the degree of defendant's culpability. Because we have concluded that the Court of Appeals was mistaken about the requirements for such an award of damages, and no other issue is presented concerning the application of the correct rule to the facts in this case, the decision of the Court of Appeals must be reversed and the judgment on the jury's verdict reinstated.

Reversed.

**TONGUE, J.,** specially concurring.

I concur in the result reached by the majority opinion in this case. I disagree, however, with the new test as adopted by the majority for application in cases such as this and which requires that in order to recover for emotional distress or for harm to reputation in an action for interference with contractual relations "the claimed injury

must be typical of the kind of contractual relationship involved in the case in order to come within the interests that the tort duty of non-interference is designed to protect * * *."

In my view, this test not only imposes a new requirement which must be satisfied in such cases, but is a test which is unworkable in practical application and is dependent upon the subjective judgment of the particular trial judge before whom the case is tried, subject to reversal in the event that the particular appellate judges before whom the case is heard on appeal may disagree with that subjective judgment. Moreover, it is a test which was not suggested by either party to this case, who have not had the opportunity to be heard upon its validity or invalidity.

I am of the opinion that instead of requiring for recovery of damages for emotional distress or harm to reputation in such a case that the claimed injury must be "typical of the kind of contractual relationship involved in the case," as held by the majority, this court should adopt the rule as stated in 4 Restatement of Torts (2nd), § 774A(1)(c), as contended by the plaintiff in this case, to the effect that one who is liable to another for interference in a contract is liable for damages for emotional distress or actual harm to reputation "if they are reasonably to be expected to result from the interference."

Under such a rule the "kind" of contract involved would be a factor, but only one factor, in considering the question whether emotional distress or actual harm to reputation is reasonably to be expected to result from the interference.

**PETERSON, J.,** dissenting.

The issue in this case is whether damages for mental distress are recoverable in an action for interference with contractual relations. The majority hold that such damages may be recoverable. I agree that mental distress damages may, in some cases, be recoverable incident to a tort claim for interference with contractual relations, but I disagree with both the analysis contained in the majority opinion and with its holding.

As I read the majority opinion, mental distress damages are allowable once the tort of interference with contractual relations is proved, but limited as follows:

1. "The mental distress, injured reputation or other harm not only must have * * * resulted from defendant's interference, it also must have been an injury of a kind that would have been expected as a common and predictable accompaniment of disrupting the type of relationship with which the defendant interfered" (majority opinion at 718).

2. Mental distress damages are limited to "* * * serious anxiety and frustration [which] are typical and predictable effects of disruptive interference in a business setting * * *. Recovery extends only to the mental or emotional distress involved in dealing with the disruption itself * * *. [D]istress at personal consequences such as a sacrificed vacation, financial stringency, or family stresses would not [give rise to damages]" (majority opinion at 719-720).

The majority opinion specifically rejects any rule which turns on the degree of defendant's culpability (majority opinion at 720), saying that there should be no consideration of "* * * the factor of defendant's culpability" (majority opinion at 716). According to the majority opinion, once the tort of interference with contractual relations is made out—that is, a showing of intentional and improper interference with the performance of the contract between another and a third person—mental distress damages follow if they meet the criteria set forth above.

I disagree. I believe that before any recovery for damages for mental distress can be made incident to the tort of interference of contractual relations, the conduct of the tortfeasor must be either "malicious" or of the "outrageous" type which would support recovery of damages on the theory of intentional infliction of emotional distress.

In 1923 Francis Bowes Sayre wrote an article in the Harvard Law Review entitled "Inducing Breach of Contract," 36 Harv L Rev 663 (1922-23). In that article he carefully traced the historical background of this tort. It appears that the tort had its genesis in claims for interference with the *property* of others. He pointed out that in

early Roman law, the head of a Roman household was entitled to bring an action of his own "* * * for insult offered to him through injury to his wife, his children, or his slaves." *Id.* at 663. In those days, wives as well as slaves were viewed as property of the head of the household.

In the thirteenth century, such a cause of action was recognized in England and in 1349 an additional remedy was created by statute, giving rise to liability for enticing another's servants. This statute, the Ordinance of Labourers, was enacted in response to the agricultural crisis created by the Great Plague. *Id.* at 665-666.

In 1853, *Lumley v. Gye,* 2 El. & Bl. 216, extended the remedy, recognizing an action for damages for interference with contractual relations. Recovery was permitted on a claim by an empresario that the defendant had *maliciously* enticed and procured a singer, Miss Wagner, to refuse to perform for the plaintiff. On page 672 of the article, Mr. Sayre concluded that although *Lumley v. Gye* involved a claim of malicious interference, by the twentieth century the remedy was available for any intentional interference with a contract. He pointed out, at page 676, that malice, in the sense of an aim to harm the plaintiff, is no longer required and that the tort can be made out upon the intentional interference with the contract of another, with competition no longer a justification for appropriation of another's property right in an existing contract. According to the Restatement (4 Restatement of Torts (Second) § 766), the tort is made out by showing that the defendant "intentionally and improperly [interfered] with the performance of a contract * * * between another and a third person."

In some torts, "* * * if mental suffering is the direct and natural result of the [tort], the jury may properly consider mental distress as an element of damages." *Fredeen v. Stride,* 269 Or 369, 372-373, 525 P2d 166 (1974) (action for damages for conversion of a dog). The concurring opinion of Tongue, J., reflects this point of view. He would allow damages for mental distress incident to a claim of intentional interference with contractual relations "* * * if they are reasonably expected to result from the interference." The majority take an intermediate view, allowing mental distress damages if the elements set forth on page 722 above are proved.

Even though it can be claimed that such approaches echo traditional formulations of recoverable tort damage rules, I disagree. I would require the showing of an additional factor (such as malice or outrageous conduct) before allowing damages for mental distress for intentional interference with contractual relations, and I take this position for reasons enumerated or implicit in the majority opinion; i.e., that while the cause of action cannot reasonably be construed as protective of economic interests alone, the remedy should not be so broadly applied as to allow recovery in every instance where interference with a contractual relationship produces emotional distress.

Dean Prosser states that there are three lines of cases which have considered this issue. One line of cases limits the recoverable damages to the contract measure of damages. Another line applies the tort measure of damages, but limits the damages to those which are "sufficiently proximate," by analogy to the rules as to negligent torts. A third line of cases treats the tort as an intentional one, and allows recovery for unforeseen expenses, as well as for mental suffering, damage to reputation, and punitive damages. W. Prosser, The Law of Torts 948-949 (4th ed 1971).[1]

In the tort under consideration, there is a marked difference from other intentional torts which allow recovery of mental distress damages. For example, in the case of an assault, no one could deny the social and individual interests in the security of a person. Such interests certainly outweigh any possible conflicting interest in the freedom to do violence. But the tort that is here involved, in a real sense, is in direct conflict with freedom of otherwise lawful commercial action. As stated by Professer Sayre,

"* * * the law can undertake to restrain everyone from committing acts of violence without seriously impairing the general freedom of action; it cannot thus undertake to restrain everyone from committing otherwise lawful acts which may result in causing people to break their contracts, without sacrificing that very freedom of individual action which the common law exists largely to secure." Sayre, *supra* at 687.

---

[1] Other authorities which list further citations to the three lines of authority include: 30 Colum L Rev 232, 236 (1930); 38 B U L Rev 285-295 (1958); 7 Santa Clara Lawyer 140, 141-147 (1966).

It seems to me that we are faced with a policy question. The award of damages for mental distress in such cases may tend to limit (to quote Mr. Sayre) "* * * freedom of individual action which the common law exists largely to secure." To the extent that the policies are in conflict, I would resolve that question in favor of freedom of individual action, subject to the limitation that where the conduct of the defendant is "outrageous" (as defined in Restatement of Torts (Second) § 46, and recognized in *Pakos v. Clark,* 253 Or 113, 453 P2d 682 (1969)), or where the defendant's goal is more than the securing of a commercial advantage, and involves as well, a desire or intent to injure the plaintiff, then damages for mental distress would be recoverable.

Permitting the recovery of the same type of damages for breach of contract as the plaintiff could obtain from the person with whom the original contract was made would make the plaintiff whole in an economic sense, at least as far as any claim for breach of contract against such person is concerned. The majority, however, would permit the additional recovery of mental distress damages, irrespective of the defendant's culpability, upon a showing that such damages are "of a kind that should have been expected as a common and predictable accompaniment of disrupting the type of relationship with which the defendant interfered."

Most jurisdictions, including Oregon, deny recovery for intentional infliction of emotional distress, as a discrete cause of action, absent some showing of aggravated circumstances such as outrageous conduct or malicious intent. To do otherwise, in a real sense, abolishes all forms and theories of action and makes directly actionable any intentional infliction of such damages. *See Fieger v. Glen Oaks Village,* 309 NY 527, 132 NE2d 492 (1956). *See also Nees v. Hocks,* 272 Or 210, 214-215, 536 P2d 512 (1975) (concept that every intentional infliction of harm is prima facie a tort unless justified was rejected). *Compare Top Service Body Shop v. Allstate Ins. Co.,* 283 Or 201, 209-210, 582 P2d 1365 (1978).

The cause of action for intentional infliction of emotional distress is not fully defined in Oregon. This court

has not yet considered whether, in the absence of the breach of an obligation incident to a defendant's special relationship to a plaintiff, recovery for emotional distress alone can be based on conduct not deliberately aimed at causing plaintiff's emotional distress. *Brewer v. Erwin,* 287 Or 435, 454-458, 600 P2d 398 (1979). However, we only allow damages in an action for the infliction of emotional distress if the actor "* * * by extreme and outrageous conduct intentionally or recklessly caused severe emotional distress." *Pakos v. Clark, supra;* Restatement of Torts (Second) § 46. Even in the cases in which this court has allowed redress for mental disturbance caused by otherwise tortious conduct, but without accompanying physical injury, the facts of those cases involved "outrageous conduct, invasion of the right of privacy, or some special circumstances of considerable magnitude." *Melton v. Allen,* 282 Or 731, 736, 580 P2d 1019 (1978). Limiting the recovery of damages for mental distress in an action for interference with contractual relations to situations involving malicious or outrageous conduct would insure a measure of uniformity in our tort law.

Granted, there are statements in *Wampler v. Palmerton,* 250 Or 65, 73, 439 P2d 601 (1968) (dicta) and *Macca v. Gen. Telephone Co. of N.W.,* 262 Or 414, 420, 495 P2d 1193 (1972), to the effect that "* * * where an independent basis of liability exists, irrespective of whether there existed physical injuries, recovery has been uniformly allowed for mental suffering and anguish." *Macca, supra* at 420. Concededly, such statements are at variance with my conclusion.

*Macca* involved an erroneous listing by the telephone company of plaintiff's telephone number as the "after-hours" number of a commercial concern, resulting in plaintiff's being disturbed by numerous late-night telephone calls. The telephone company, when informed of its error, refused to correct the situation by placing the number on "intercept." We characterized plaintiff's cause of action as being "* * * governed by the law relating to private nuisance, and [we stated that] plaintiff is entitled to recover for mental distress resulting from defendant's negligent act." 262 Or at 418.

I confess to being less than completely confident in my position, because my suggested "rule" would depart from the normal damages rule in tort cases and impose a required showing of a second tier of culpability in order to obtain the type of damages—mental distress damages—which normally are recoverable upon proof of the elements of a tort. Perhaps my disagreement with the majority is not that substantial, for they, too, limit damages for mental distress, requiring that the elements set forth on page 722, above, be made out.[2]

A certain amount of emotional distress and anxiety is an unavoidable part of living in our complex society. As stated above, we have heretofore strictly limited recovery of damages for such emotional distress and anxiety. Our society is one which has depended, since its inception, upon a high degree of "freedom" in conducting economic transactions. To again quote Mr. Sayre, this tort differs from many other torts in that the interest in the promised business advantage is "peculiarly apt to be in direct conflict with the interests of third persons in * * * the general freedom of 'motion and locomotion'; often the former interest can be protected from interference by third parties only by a sacrifice of the latter * * *." 35 Harv L Rev at 687.

I see a real difference between (1) interference with contract, simply to get the benefits of a deal (as, for example, if a defendant induced a third person to break a commodity contract with the plaintiff, and the defendant did not know with whom the third person had contracted, but the defendant simply needed the commodity for legitimate business purposes) and (2) interference with an existing contract in order to vex, annoy, injure or otherwise harm a plaintiff. In both cases the act is intentional. But in both cases the goal is not identical; there is a substantial difference between the two situations—a difference which should be recognized and applied.

Turning then to the facts of this case, the evidence shows that the defendant's motive in purchasing these

---

[2] At all events, it should be remembered that one of the elements of this tort is intentional interference with a contract "for an improper objective or by wrongful means." See majority opinion at page 717. The factors to be considered in determining whether interference is "improper" are set forth in Restatement (Second) of Torts § 767.

cattle from the third person was not to vex, annoy, or injure the plaintiff. The evidence shows that the defendants, and an agent for the defendant Johnson Cattle Co., Inc., had been dealing with the third person for the purchase of these very cattle for approximately two months, but had been unable to reach an agreement with her. In the absence of any evidence of aggravated misconduct or malicious intent on the part of the defendant, I would deny recovery of damages in this case.

Tanzer, J., joins in this dissent.